INTERNATIONAL HARVESTER CORP.
*v.* Kristina L. HARDIN et al

78-148                           574 S.W. 2d 260

Opinion delivered December 18, 1978
(Division II)

*David Solomon* and *Barber, McCaskill, Amsler, Jones & Hale,* for appellant.

*Daggett, Daggett & Van Dover,* for appellees.

CONLEY BYRD, Justice. In 1968 W. R. Moore purchased a model 125 Cub Cadet garden tractor with a 42 inch mower attachment. The garden tractor, powered by a 12 horsepower engine, was hydrostatically operated — *i.e.* through the use of hydraulic controls the speed of the tractor either forward or backward could be increased or decreased without varying the speed of the 12 horsepower gasoline engine. Although the tractor was designed for use with a number of attachments, such as a snow plow, front-end loader and a rotary tiller, Mr. Moore only used it as a riding lawn mower. On October 5, 1974, Mr. Moore, without looking to his rear, backed the tractor over the feet of six year old Kristina L. Hardin, resulting in the loss of a toe on one foot and the complete amputation of the other foot. Kristina, by her father Clyde Hardin as next friend, brought this action against Mr. Moore and appellant International Harvester Corp. The alleged negligence of International Harvester Corp. was in failing to design the mower with an appropriate "cow catcher" device on the rear; failure to design said mower so that the rotary blade would be guarded when in reverse; failure to design said mower so that the cutting blade exposure would be at a minimum or with safety devices attached to the rear; failure to make proper tests and inspections; and failure to acquaint and warn W. C. Moore with the potential hazards and use of the mower.

The jury upon interrogatories found that both W. C. Moore and International Harvester Corp. were negligent, that such negligence was the proximate cause of the damages ($100,000 to Kristina L. Hardin and $25,000 to Clyde Hardin, the father) and apportioned the liability at 50% to W. C. Moore and 50% to International Harvester Corp. International Harvester has appealed contending that the trial court erred in refusing to permit a representative of International Harvester to remain in the room after the rule was invoked and that the trial court should have directed a verdict in favor of International Harvester.

POINT I. The record shows that at the beginning of the trial when the rule was invoked, James F. Bennett, Product Integrity Manager for the Agricultural Equipment Group of International Harvester and the employee in charge of the

safety aspects of performance of International's farm equipment was excluded from the courtroom over the objections of counsel for International Harvester. The exclusion of this type of witness from the courtroom is now controlled by the Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Supp. 1977), Rule 615 which provides:

"Rule 615. Exclusion of witnesses. — At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."

In response to appellant's allegation of error, appellees state:

"Our answer to this argument is threefold, *i.e.*, first it was not the intent or purpose of the statute to allow an expert witness to sit at the counsel table under the guise of being a representative of a corporate defendant, second, if error was committed by the court in denying the expert witness to remain in the court room, it was invited by appellant's counsel, and, third, even if the failure to permit the witness to remain in the courtroom during trial was error, it was harmless error and unaccompanied by any showing of prejudice and therefore not reversible error."

Appellees cannot bring themselves within the harmless error rule. The general rule is that error is presumed to be prejudicial unless the contrary affirmatively appears from the record. Only by surmise can it be said that the exclusion of witness Bennett was harmless. The law in this State does not permit speculation on the issue. Neither is the case of *McCoy Farms, Inc., et al* v. *J & M McKee,* 263 Ark. 20, 563 S.W. 2d 409 (1978), authority for the proposition asserted by appellees. In that case the sole defense to the foreclosure ac-

tion was usury. Although we concluded in *McCoy Farms* v. *J & M McKee, supra,* that the trial court erred in excluding the appellant's Arkansas counsel, we found affirmatively from the record that such error could not have been prejudicial to appellant. Furthermore, in oral argument on appeal, appellant in the *McCoy Farms* case was unable to bring forth any fact or theory that the Arkansas counsel might have brought out that would have sustained the defense of usury. In the case before us now, the issue involved the design of a lawn and garden tractor and the application of technical standards adopted by the American National Standards Institute — matters involving technical terms with which a lawyer is not necessarily familiar.

The suggestion that counsel for appellant invited the error is not supported by the record which shows that counsel in protesting the exclusion of witness Bennett correctly insisted that Bennett was appearing in his corporate capacity a an employee of International Harvester and, as such representative, counsel was entitled to have Bennett present at the counsel table.

Had the issue here been one of credibility such as was involved in *Rushton* v. *First National Bank of Magnolia,* 244 Ark. 503, 426 S.W. 2d 378 (1968), the trial court would obviously not have abused its discretion in refusing to accept counsel's designation of Bennett as a representative of the corporate defendant. However, the issue here was one of design of a lawn and garden tractor that was still in existence and subject to view. Under these circumstances when the trial court excludes from the courtroom the regular employees in charge of the safety design of equipment of the corporate manufacturer, we must conclude that the trial court's ruling was contrary to Rule 615 of the Uniform Rules of Evidence, *supra.*

POINT II. The only witness called by appellees to show the defective design of the lawn and garden tractor was George Green, Jr., who the trial court ruled qualified as an expert on design, although he admitted that he had never designed a lawn mower. This witness admitted that the lawn and garden tractor and the lawn mower attachment were built in accordance with the applicable industry standards — *i.e.,* the American National Standards Institute (ANSI). The

American National Standards Institute is a body composed of representatives of consumers, manufacturers and insurance companies who address themselves to the safety of lawn mowers.

Witness Green referred to a 1962 Consumer Bulletin that suggested a riding lawn mower should be equipped with a cow catcher device mounted on the front and rear. He suggested that on the particular machine involved such a device could be constructed of 16 gauge steel. He pointed out that while being operated in reverse the height of the tractor tended to knock a child down and expose the child's feet to the lawn mower. His proposed cow catcher device would tend to cause the child to fall toward the mower giving a warning of his presence to the operator. On cross-examination he elucidated by stating that he contemplated a device 18 inches in width which would go between the wheels of the tractor and would be attached to the lawn mower. The device should be connected to a switch that upon contact would operate a clutch brake device. He had not given much thought to the problem of disconnecting the mower from the tractor but suggested a swivelling device with a pin for removal of the mower attachment. Mr. Green readily admitted that he had never seen such a cow catcher device attached to a riding lawn mower and that he did not know of any manufacturer that made one. He readily admitted that his 18 inch cow catcher proposal would leave unprotected the rear wheels of the tractor and those portions of the lawn mower extending beyond the 18 inches.

Witness Green at first suggested that the lawn mower and tractor were defectively designed because the seat on the tractor did now swivel. However, he subsequently conceded that a swivel seat might not be a good safety device since it would tend to throw the operator from the tractor on uneven terrain.

Another design defect suggested by witness Green was that the tractor should be equipped with wide angled rear view mirrors. On cross-examination he questioned his own suggestion because of the practical problem in getting the mirror broken while mowing around shrubbery. He admit-

ted that he had never seen a garden tractor equipped with such a mirror.

Other undisputed proof in the record shows that the tractor traveled 8 miles per hour in its fastest forward speed and four miles an hour in its fastest rear speed. It was also shown that it took five seconds for the gasoline engine to stop after the ignition was turned off.

On the basis of the record before us we must conclude that the trial court erred in refusing to direct a verdict in favor of International Harvester Corp. Witness Green's testimony represents the ultimate difference between doing something and talking about doing something. The cow catcher attachment about which Green testified was all based upon surmise and conjecture for he readily admitted that he had never seen such an attachment on a riding lawn mower and obviously had never tested such a design. In the final analysis his testimony is nothing more than untried theory. Furthermore, since the proof does not show what portion of the lawn mower was backed over the feet of Kristina L. Hardin the jury would have had to speculate on whether the proposed 18 inch "cow catcher" would have prevented the injury in question.

With respect to the swivel seat, Green himself admitted that a manufacturer should not manufacture in one defective design to avoid another. Such a suggestion as that and the one on the possibility of a rear view mirror would leave it to any jury to find a defective design in every vehicle manufactured by man.

Appellee cites *South Austin Drive-In Theatre* v. *Thomison*, 421 S.W. 2d 933 (Tex. Civ. App. 1967), as saying that the testimony of witness Green constituted substantial evidence. We disagree with that assertion. In the *South Austin Drive-In Theatre.* case a riding lawn mower manufactured by Gilson Bros. Co., a Wisconsin Corporation, was backed over a six year old boy severing his left leg. Gilson Bros. Co. was sued on the basis that it was negligent in failing to enclose the chain drive with a shroud in accordance with American National Safety Institute standards. The evidence showed that when the boy was discovered with his leg under the

mower, the chain sprocket and drive had trapped his left leg until the mower had to be overturned before he could be pulled from underneath the mower. The expert witnesses testified that once the boy's foot got caught under the chain drive, the unguarded chain drive would walk his leg underneath the shroud of the lawn mower like a caterpillar truck. Other mowers in evidence showed that other manufacturers had placed guards over the chain drives of their riding lawn mowers. Thus we see that the conduct of Gilson Bros. Co. in failing to guard the chain drive in accordance with the ANSI standards actually compounded the negligence of the operator, in reversing the riding lawn mower without looking, by walking the boy's leg under the shroud guarding the rotary blades of the lawn mower. No such showing is made in the case before us — in fact it is admitted that nobody had manufactured a "cow catcher" device for a riding lawn mower as suggested by witness Green.

For the reason herein stated, the judgment against International Harvester is reversed and remanded.

The judgment against Moore is affirmed for failure to comply with Supreme Court Rule 10.

Reversed and remanded.

We agree: HARRIS, C.J., and FOGLEMAN and HICKMAN, JJ.