## 52414. BRAMBLETT v. THE STATE.

QUILLIAN, Judge.

Defendant was indicted jointly with his brother for the offenses of burglary and theft by taking. His first trial resulted in a conviction for theft by taking which was reversed by this court in *Bramblett v. State,* 135 Ga. App. 770 (219 SE2d 26). He was granted a new trial. He appeals his second conviction. *Held:*

1. After reversal of the first conviction, a new trial was directed and counsel for defendant — who did not represent him during the first trial, filed a "Demurrer to Indictment." This document was actually a general and a special demurrer. It alleged that the indictment failed to set forth an offense, did not allege the crime with specificity, nor sufficiently describe the property allegedly taken. The demurrer was "overruled and denied."

The trial court held that the demurrer was not timely

filed. We agree. Demurrers must be seasonably filed or the right to object is waived. *Jackson v. State,* 112 Ga. App. 834 (1b) (146 SE2d 541); *Bryant v. State,* 224 Ga. 235 (161 SE2d 312). A special demurrer must be filed before the defendant pleads to the merits or it is too late. *Burns v. State,* 191 Ga. 60, 63 (11 SE2d 350); *Robertson v. State,* 127 Ga. App. 6 (192 SE2d 502). Legal precedent is more confusing as to when a general demurrer, or its legal equivalent, must be filed.

Our Supreme Court has stated that defects in an indictment or accusation must be taken advantage of by demurrer before trial, or by a motion in arrest of judgment after conviction. *Rucker v. State,* 114 Ga. 13 (1) (39 SE 902). Accord, *Davis v. State,* 105 Ga. App. 5 (1) (123 SE2d 271). However, in *Gilmore v. State,* 118 Ga. 299 (45 SE 226), the court held that if "the indictment or accusation is so defective that judgment upon it would be arrested, attention may be called to this defect at any time during the trial, and it may be quashed on oral motion." Id. at 299-300. Our Supreme Court has also held that regardless of how such motions are designated, if filed under Code § 27-1501, they should be made in writing upon the defendant's being arraigned or they will be deemed to have been waived. *Bryant v. State,* 224 Ga. 235, supra.

These holdings are consistent with the earlier precedent of *Reddick v. State,* 149 Ga. 822 (102 SE 347), which held that in a case where the defendant was neither arraigned nor entered a plea "after the introduction of evidence upon the merits. . .the defendant will be deemed to have waived formal arraignment, and it is then too late for him to demur; and the court did not err in refusing to allow the defendant to demur, nor in overruling the motion to quash." From the foregoing, we have concluded that demurrers, both general and special, must be filed before a plea is entered or they will be held to have been waived.

The foregoing determination was necessary before proceeding to the second part of this issue. What is the effect of entering a demurrer before a new trial where no demurrer was filed before the first trial? "[M]ost of the decisions are against allowing an attack to be made upon the indictment. . .[for the first time, before a new trial]

merely because of reversal or setting aside of a conviction." Annot. 145 ALR 493; 41 AmJur2d 1060, Indictments and Informations, § 291; 42 CJS 1168, Indictments and Informations, § 199. If the setting aside of the conviction causes the proceedings to revert simply to the point where a new trial would be held on the old issues, leaving unaffected any plea to the merits previously filed, defendant is subject to the general rule "that after a plea to the merits a motion to quash an indictment [or demurrer] is too late. . .[T]he reversal or setting aside of the conviction would not revive the right to attack the indictment or information. . ." Annot. 145 ALR 493. Grant of a new trial does not authorize entry of a motion or demurrer which had not been made at the "proper time" in the first trial. Nations v. United States, 52 F2d 97 (8th Cir. 1931); 42 CJS 1168, Indictments and Informations, § 199.

We need not reach the merits of the demurrer as it was not seasonably filed.

2. Defendant alleges that the trial court's failure to approve his motion to suppress was error. We do not agree. The warrant to search the van which revealed the goods allegedly stolen was issued by a justice of the peace. Defendant contends that the justice of the peace was not a "neutral and detached magistrate...as he...[was] entitled to receive $5.00 for the issuance of every search warrant and is entitled to receive no amount if one is refused. . ."

Search warrants may be issued only by neutral and detached parties. Coolidge v. New Hampshire, 403 U. S. 443 (91 SC 2022, 29 LE2d 564) (1971). A justice of the peace is a proper official to issue a search warrant. *Veasey v. State,* 113 Ga. App. 187 (1) (147 SE2d 515); *Dye v. State,* 114 Ga. App. 299 (1) (151 SE2d 164). He is "not disqualified . . . because he was to be paid, for so doing, the cost allowed [by law], and to receive nothing if he refused to issue the warrant. . ." Commonwealth v. Dabbierio, 290 Pa. 174 (138 A 679); 79 CJS 852, Search and Seizure, § 72a. There is no merit in this contention. *Connally v. State,* 237 Ga. 203.

Defendant also alleges there was not sufficient information in possession of the law enforcement officials "to justify a warrantless search and seizure of the van" of

the defendant. We disagree with this assessment on two grounds: First, there was not a warrantless search of the van, and secondly, there was sufficient information to establish probable cause for a warrantless search of the van had it occurred.

An FBI special agent and a Dalton police officer received information from an informant that yarn was being stolen from the Crown Cotton Mill and that a named individual would be driving a light colored, Ford Econoline van, with a certain license number, on a certain date, and that the yarn would be taken after midnight. Prior information from this informant "had proven to be correct." While the FBI agent and police officer were driving to the stakeout they drove up behind a van, could see through the back windows that it was empty, and when it turned into the Crown Cotton Mill they observed that the tag number was the one that they had been given by the informant.

The van departed the warehouse area at 12:55 a.m. and the FBI agent followed it. A check with the manager of the cotton mill and the warehouse prior to that evening showed that "nothing was to legitimately leave the warehouse that evening. . ." When the van slowed to turn into a residence the FBI agent came up closer behind it and could see that the "back windows were obscured by something inside." After the van had parked at the residence, the FBI agent walked up beside the van and could see through the windows that it contained cardboard boxes. The license tag was the same number as that given them by the informant and the one that they had seen entering the warehouse area earlier that evening. The defendant was driving the van and was placed under arrest. The Dalton police officer arrived shortly thereafter and had a wrecker tow the van to the city hall where a search warrant was obtained. We find no merit to this enumeration of error. Probable cause for issuance of the search warrant and search of the motor vehicle was established. Chambers v. Maroney, 399 U. S. 42 (90 SC 1975, 26 LE2d 419) (1970); *Register v. State,* 124 Ga. App. 136 (183 SE2d 68); *Underhill v. State,* 129 Ga. App. 65 (2) (198 SE2d 703).

3. Enumerated as error is admission of hearsay

evidence over objection of defendant. The district attorney explained that such testimony was "to show course of conduct as to why [the police officer] was out there. . ." The court ruled that he would "let it in for that purpose and instruct the jury whatever the conversation is would be admitted solely to show conduct on the part of the officer, and not for any probative value." Upon objection by defense to the testimony of the second police officer, the court ruled that he would "let it in on the same basis as [he] did before. . .to show his action and what he did, not to prove the truth of a statement given to him, it would have no probative value." Hearsay is admissible to explain conduct. Code § 38-302. We find no prejudice to defendant due to the limited and correct ruling of admissibility. *Jones v. State,* 224 Ga. 283 (3) (161 SE2d 302); *Tanner v. State,* 228 Ga. 829 (3) (188 SE2d 512).

4. The state introduced the return of the police officer who executed the search warrant showing the inventory of property recovered from the van defendant was driving. It showed the "Case No." and "Inv. No." of the yarn allegedly taken in the theft. Defendant contends that it was not properly certified to be introduced in evidence.

"Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event shall be admissible in evidence in proof of said act, transaction, occurrence or event if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act. . ." Code Ann. § 38-711 (Ga. L. 1952, p. 177). A foundation for introduction as a business entry was not made, as such, by use of the testimony of the police officer. But the search warrant was before the court and it directed the executing officer to "prepare a written inventory of the property seized." The business entry statute also directed that it "shall be liberally interpreted and applied," and a subsequent resolution of the legislature (Ga. L. 1958, pp. 542, 543) evidences an intent that ". . . records . . . made in the ordinary course of business and made as a memorandum or record of an event at or near the time it

occurred . . . would be admissible in evidence . . . provided such records are properly vouched for. . ." We consider the evidence of record minimally sufficient to show the return of the search warrant was made in the ordinary course of official police business, e.g. that it was required to be made, it was of an "act . . . occurrence or event" and not an opinion, and was properly identified by the man who made it. Cf. *Pickett v. State,* 123 Ga. App. 1 (2) (179 SE2d 303); Green, Ga. Law of Evidence 623, § 315. There is no merit to defendant's objection.

5. It is contended that the trial court erred in denying defendant's motion for a mistrial based on the ground that the district attorney cross examined defense witnesses as to the former trial of the defendant. We do not agree.

Defendant used his brother and sister as witnesses in his defense in the second trial. His brother testified that he alone committed the offense charged against the defendant. Defendant's sister testified that defendant was with her during the time the offense was committed. The district attorney asked the brother: "Q. You know that there was a trial on this matter back in September of 1974, do you not? A. When they tried Howard [the defendant] in September? Q. That's correct. A. I sat right over there. . . Q. Surely at that time you came forth and testified to clear your brother, did you not? A. I pled guilty. . . I was advised not to be on the stand for my brother."

Similar questions were posed to defendant's sister: "Q. And you know that there was a trial back in September of 1974, did you know that? A. Yes, I knew that. Q. Did you go testify at that trial? A. I did not."

We are presented with a conflict of interests. When proceedings of the former trial have been set aside, a new trial proceeds de novo. See generally, 58 AmJur2d 438, 452, New Trial, §§ 215, 228. Reference to the former trial can amount to prejudicial error. *Wilson v. Northside Plumbing Co.,* 128 Ga. App. 625 (3) (197 SE2d 419). On the other side of the coin is the right of the district attorney to a thorough and sifting cross examination of defendant's witnesses, including matters touching on their credibility. Code § 38-1705; *Smith v. Varner,* 130 Ga. App. 484 (4) (203 SE2d 717); Green, Ga. Law of Evidence

328, § 132.

These conflicting interests must be balanced. The defendant offered the witnesses and he cannot complain if the district attorney asserts his right to cross examine as to evidence touching on the witnesses' credibility. It cannot be denied that the failure of the defendant's brother and sister to come forward and testify in the first trial affects their credibility when they testify at the second trial that defendant was not present at the crime. Ranz v. Yaschenko, 329 Ill. App. 274 (8) (67 NE2d 891) (1946). Credibility of the witness is for the jury. Code § 38-1805. The questions were proper as touching on the witnesses' credibility, and the fact that they incidentally show a prior trial of defendant is not error, *where the result of the first trial was not shown.* Grimes v. State, 64 Tex. Cr. 64 (141 SW 261) (1911); Barber v. State, 64 Tex. Cr. 96 (142 SW 577) (1912); Henderson v. State, 104 Tex. Cr. 495 (5) (283 SW 497) (1926); 98 CJS 379, Witnesses, § 485 (6).

6. The remaining enumerations are without merit.

*Judgment affirmed. Deen, P. J., and Webb, J., concur.*

SUBMITTED JULY 14, 1976 — DECIDED SEPTEMBER 10, 1976 — REHEARING DENIED OCTOBER 1, 1976 —

*Wm. Ralph Hill,* for appellant.
*Samuel J. Brantley, District Attorney,* for appellee.