Mary B. WALLIN et al *v*. INSURANCE COMPANY
OF NORTH AMERICA and FEDERAL
GUARANTY LIFE INSURANCE COMPANY

CA 79-214                               596 S.W. 2d 716
Court of Appeals of Arkansas
Opinion delivered March 19, 1980
Released for publication April 9, 1980

*Sharpe & Morledge, P.A.,* for appellants.

*Penix, Penix & Mixon* and *Butler, Hicky & Hicky,* for appellees.

ERNIE E. WRIGHT, Chief Judge. This is an appeal from a verdict and judgment in favor of each of the appellees, Insurance Company of North America and Federated Guaranty Life Insurance Company, in suits against them by appellants who were the beneficiaries under a separate insurance policy issued by each of the appellants insuring the life of Keith W. Wallin.

The suit against Federated sought recovery of $25,-000.00, the face amount of a life insurance policy, and the suit against INA sought recovery of $50,000.00, the face amount of an accidental death policy.

Separate suits were filed against each appellee and were later consolidated for trial.

The insured was found dead in his motel room in Fort Lauderdale, Florida on the morning of November 15, 1974, by a motel housekeeper. His body was lying across the bed, he was fully clothed and there was a gunshot wound in his left chest. The bullet had passed through the left chest and exited from his back. A revolver containing four live rounds of ammunition and one spent shell was lying in the floor about six or seven feet from the body. The room was in order and show-

ed no evidence of violence other than the results of the single gunshot. The motel door was locked with the lock in the door knob that locks automatically when the door is closed, and the housekeeper gained entrance by use of a key after there was no response to her knock on the door.

The motel manager, Sheriff's Office and the County Medical Examiner were notified. The motel manager went to the room and viewed the body before the officers arrived.

Both policies contained a suicide exclusion clause and both defendants asserted suicide as a defense. Suicide is the intentional taking of one's own life. There is a presumption against suicide and this presumption arises even where it is shown by proof that the death was self-inflicted. The death is presumed to have been accidental until the contrary is made to appear. The burden is upon the one interposing the defense of suicide to establish the fact of suicide by a preponderance of the evidence.

Since the INA policy was an accidental death policy the burden was on the appellants to establish that the death was accidental.

The evidence leaves no room for doubt that the insured died as a result of a gunshot wound in his left chest. The crucial decision for the jury was whether the insured died as a result of suicide or whether the death was the result of accident or possibly homicide at the hands of an unknown person. Determination of the ultimate issue was for the jury, and of necessity, the determination had to be made upon circumstantial evidence and competent opinion evidence.

Dr. Geoffrey Mann, a pathologist and Chief Medical Examiner for the 17th Judicial District of Florida, which includes Fort Lauderdale, investigated the death in the discharge of his official duties. A test was performed for blood alcohol content and it showed an alcohol content of 0.17 per cent. In Dr. Mann's opinion the deceased was intoxicated at the time of his death. He testified the deceased was lying diagonally across the bed, there was a gunshot wound in the left chest, the bullet had passed through the body and exited

in the back, the bullet had gone through the wall after passing through deceased's body and was found in the bathtub where it had dropped after passing through the wall, that it was obvious the deceased had been sitting on the bed when he fired the shot and the gun had been held tightly against his chest. There were extensive powder burns and the chest wound was jagged and burned, it was obviously a contact shot. There was no sign of any disturbance in the room. It was his conclusion the subject died as a result of a self-inflicted gunshot wound in the left chest, and that the bullet had gone through the heart.

There was testimony by Dr. John Bimmerle, a psychiatrist on the staff of Coral Ridge Psychiatric Hospital who treated the deceased while he was hospitalized there from November 2, 1974, to November 14, 1974. He testified the deceased showed a depressive and anxiety state. The patient was treated with medications to relieve depression and anxiety. He improved and was discharged November 14, 1974, to continue as an out patient with Henderson Clinic. He was given a pass some three days prior to discharge and resumed his work. His history showed a denial of sucidal ideation or any attempts at suicide. He was satisfied Mr. Wallin wanted to live when he discharged him from the hospital. He did not have a psychotic depressive reaction. He was not in a severe depressive state when he came into the hospital and he was improved at the time of discharge.

Wendell Wallin, father of the deceased, and one of the appellants, testified the deceased never talked about suicide, and that he "loved living about as well as anybody I knew."

Mary Wallin, mother of the deceased, and a plaintiff in the suit against each of appellees, testified Keith was age 26 at the time of his death, that he had gone to Florida in July, 1974, that she and her husband talked to him by telephone every two or three days. Her husband was fixing up a Cadillac for him that he was to pick up when he came home for Christmas. At the time of this death he had $94.00 in a bank in Fort Lauderdale, several hundred dollars in the Cross County Bank, and $2000.00 or $3000.00 in the Wynne Federal Savings & Loan Association. He had two pay checks

for over $100.00 each at his place of work he had not picked up. He "loved life more than anybody I had ever known."

Giles Charette, a deputy sheriff who investigated the death, testified. Incident to his testimony his written report of the investigation was read in evidence. The following portions of the report were received in evidence over the objections of appellants that the statements were incompetent as hearsay:

> . . . Mr. Brawner stated that his nephew had been treated for mental disorder for the past three or four years and had been admitted in several hospitals in regard to that situation, and also had an extremely long past of DWI type accidents and reckless driving.

> . . . The driver of the vehicle, above victim, was charged and cited by Trooper Peterson for driving while intoxicated and careless driving. The victim was then booked at the Broward County Sheriff's Jail by Trooper Peterson on the above charges.

> . . . This writer talked to the maid who stated that approximately 10:30 a.m. on the date in question, 15th of November, 1974, she was contacted by the desk clerk Orrin Silverstein who told her that he was in contact with the victim's supervisor Richard Ricones and Ricones advised him that he tried to make contact with the victim by phoning the victim's room and was unable to reach him, so he asked the desk clerk if he would send one of the maids or someone to the room to see if he could make physical contact with the subject because the victim had been very depressed in the past and everything else, and he was afraid that something could have happened to him.

> . . . Further investigation at the scene, after talking to the supervisor of the victim, indicated that the victim had been released from Coral Ridge Hospital on the 14th of November, 1974, and had been there under psychiatric help.

> . . . This writer contacted the Coral Ridge Hospital

where it was verified that the victim was admitted into the hospital on the 1st of November, 1974, same day as the accident, and was being treated for mental disorders, and that the victim was being released on the morning of the 14th of November, 1974.

The court overruled the objection and held the above statements from the report were admissible as an exception to the hearsay rule on the ground the report was a business record and admissible under Rule 803(6) of the Uniform Rules of Evidence.

Appellants assert as a ground for reversal that the court erred in admitting this evidence and point out that subdivision (8) of Rule 803 specifically provides for the admissibility of public records and reports as an exception to the hearsay rule, but specifically provides that, "Investigative reports by police and other law enforcement personnel", are not within this exception to the hearsay rule.

It was a fact question for the jury to determine whether the insured died as a result of suicide. The burden of proof was upon the defendants to prove that death was a result of suicide.

We hold the ruling of the court in receiving in evidence the above quoted portions of the report of Officer Charette over the objections of appellants was error requiring reversal. The challenged excerpts of the report are clearly hearsay and the report is not admissible as a business record under Rule 803(6) of the Uniform Rules of Evidence. Subsection (6) of the rule does not mention a public office under the definition of "business", and Rule 803(8) deals specifically with the admissibility of public records and reports, and specifically excludes the admissibility of investigative reports by the police and law enforcement personnel.

Appellees argue that even if it should be determined that the evidence was erroneously admitted, it was merely cumulative and harmless error not requiring reversal. We do not agree. The hearsay statement in the report attributed to Mr. Brawner was substantially stronger against the plaintiff's

case than other evidence in the record concerning prior hospitalizations for mental disorders and past history of DWI type accidents and reckless driving. The error in admitting this incompetent evidence was compounded by permitting the hearsay statement by Mr. Brawner to be singled out and separately reread to the jury.

The appellants assert error in the admission of certain testimony by Mr. Berwig, the motel manager. The deposition of Mr. Berwig was read in evidence including the statement, "I remember that the time I walked into the room I had the impression that he had committed suicide." The appellants specifically objected to the admission of the "impression" which was received over objections and without reasons given by the witness for the impression. We hold the ruling of the court was error and prejudicial when the witness did not give the reasons for the opinion.

While unquestionably there was ample competent evidence in the record to sustain the verdict of the jury, we could only speculate or surmise as to whether the incompetent evidence influenced the jury in finding for the appellees. Under such circumstances we cannot say the ultimate result was not affected and that there was no prejudice to appellants. The rule is that error in the trial is presumed to be prejudicial unless the court on appeal can say with assurance the error is harmless. *International Harvester Corp.* v. *Hardin,* 264 Ark. 717, 574 S.W. 2d 260 (1978). *Arkansas State Highway Comm.* v. *Fougerousse et ux,* 248 Ark. 310, 451 S.W. 2d 459 (1970). *Arkansas State Highway Comm.* v. *Roberts,* 246 Ark. 1216, 441 S.W. 2d 808. *State National Bank of Texarkana* v. *Birmingham,* 166 Ark. 446, 266 S.W. 76 (1924). *St. Louis, Iron Mountain & Southern Railway Company* v. *Williams,* 108 Ark. 387, 158 S.W. 494 (1913).

As to appellants' asserted error in the ruling of the court admitting the Social Service History of the deceased incident to his admission to Coral Ridge Psychiatric Hospital, we hold the report was adequately identified by the associate medical director of the hospital as being a part of the hospital record made for the purpose of medical diagnosis and treatment, and is admissible under Rule 803(4) and 803(6).

Reversed and remanded.

PENIX, J., not participating.