## 77476. GANN v. THE STATE.
### (378 SE2d 369)

BEASLEY, Judge.

Gann appeals his conviction and sentence for burglary, OCGA § 16-7-1.

The evidence construed so as to uphold the verdict, *Thomas v. State*, 175 Ga. App. 873, 874 (1) (334 SE2d 903) (1985), showed the following: Between 4:50 and 5:05 p.m. on the day of the burglary, the victim, whose father had died that morning, gave his neighbor Harris a ride. The victim then went to his mother's house and while there could not recall whether he had secured his house and machine shop before leaving. Consequently, at approximately 9:00 p.m., he took a friend with him and checked the locks. He noticed nothing out of the ordinary.

While checking his machine shop, the victim noticed Harris standing outside and another man standing at the corner of his house. Harris asked to borrow a tool. The victim found the tool and then left with his friend. As they were leaving, they saw Harris and the other man walking in the direction of Harris' house.

Earlier that day, five men including appellant gathered at Harris' home and stayed for quite some time. After Harris determined that no one was home at the victim's residence, one of the men suggested

that the group break in. Harris and appellant and two of the men went across the street in the direction of the victim's house. Of the remaining two men, one stayed at Harris' house and was later to watch for the victim's two large dogs. One stayed in the woods as a lookout. The four ransacked and burglarized the victim's home and his two work buildings. The lookout observed appellant, Harris, and a third man coming from the victim's house carrying rifles, a VCR, and pillow cases full of something. A dropped microwave was left along the route the men took through the woods.

The stolen property, along with some of Harris' personal possessions, was loaded onto the back of one man's truck. The five men along with Harris' wife and mother-in-law rode in the truck to appellant's trailer. It had been decided earlier in the day that Harris and his family could move in with appellant.

Between 10:30 and 11:00 p.m., the victim returned home with his wife and son to find everything in the house damaged or gone. The missing items included a VCR, microwave oven, antique dolls, jewelry, jewelry boxes, a coin box and telephones. The victim's shops had also been burglarized with only a few items left and the safe cut open. What remained had been piled up as though to be carried away. The safe had been opened with a cutting torch. Rings, silver, a gun collection, and $17,270 in cash were taken.

Investigating officers found the Harris home vacant and dark save for illumination from an electric stove which had been left on. Later, the victim and a friend found a path in the woods leading to the Harris home. A search of the house uncovered the victim's VCR. The next morning, the victim's microwave was found in the woods.

Harris and appellant were tried together and convicted of the burglary.

1. Appellant contends that the trial court erroneously admitted a police incident report into evidence and allowed a testifying officer to read hearsay statements to the jury from the report.

He maintains that the time of the burglary was a critical element of the case, that the State sought to prove that the burglary occurred earlier than approximately 11:00 p.m. when the victim testified he returned home, which time was consistent with his defense, and that to set the burglary at an earlier time the State sought admission of the incident report which contained a range of between 9:30 and 10:30 p.m. for entry of the burglarized premises to have occurred. Appellant agrees that certain types of police records may be admissible under the business records exception to the hearsay prohibition, see OCGA § 24-3-14, but that the report at issue was inadmissible because the times given in it were in a narrative statement at the bottom of the form, the source of which statement was unidentified.

"Proof of facts by a document or a duly authenticated copy

thereof is not objectionable as violative of the right of confrontation. [Cits.]" *Hill v. State*, 162 Ga. App. 637, 638 (2) (292 SE2d 512) (1982). "A police report may be admissible as a business entry [OCGA § 24-3-14 (b)] where a proper foundation is laid, but when it includes hearsay statements, opinion evidence, and conclusions, it is not generally admissible. [Cits.]" *Pickett v. State*, 123 Ga. App. 1, 2 (2) (179 SE2d 303) (1970). See also *Benson v. State*, 150 Ga. App. 569, 570 (2) (258 SE2d 156) (1979). Appellant does not complain about the foundation for the report but solely about the alleged hearsay statement.

The police captain who identified and laid the foundation for the report testified that the information could have come from the victim and from the observation of the scene by the investigating detective, who was also the reporting officer. So it is true that the source of the information was unknown and inadmissible hearsay. OCGA § 24-3-1. However, the victim's testimony regarding the time of the crime viewed in its totality did not conflict with the time frame in the report. Rather, the report echoed the time span described by the victim.

But even if we deem the evidence of time in the report as cumulative, this does not end the inquiry. "The fact that inadmissible evidence to which objection is interposed at trial is cumulative of other competent, admissible evidence *is* a factor to be considered on appellate review in determining whether the admission thereof is reversible error. [Cit.] Cumulativeness, however, is *not* an exception to the hearsay rule. . . ." *Parker v. State*, 162 Ga. App. 271, 273 (5) (290 SE2d 518) (1982). The question then becomes whether or not the defendant was harmed by the inadmissible hearsay, i.e., whether or not it was highly probable that the statement of time in the report contributed to the judgment of guilt. Id. at 275 (5); *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

Defendant completely denied entry of the victim's home or work premises and participation in the burglary in any manner. His alibi was that he and the others in the truck arrived at the Harrises around 4:30 or 5:00 p.m. to check on Harris and his pregnant wife because the Harrises' living conditions were so bad. Defendant unsuccessfully worked on the Harrises' water pump. He invited Harris and his wife to stay with him and his wife in his trailer. Harris and the others loaded some of Harris' possessions into Powell's truck. Defendant paid no attention to what was being loaded on the truck as he was watching television. After the truck was loaded, the group went to defendant's trailer, arriving about 7:30 or 8:30 p.m. The truck was unloaded and the property put in a storage room. He did not go back to the Harrises that evening.

Therefore, the statement contained in the report, that someone entered the residence between 9:30 and 10:30 p.m. did not conflict with the defense or otherwise prejudice defendant. If anything, it

tended to exculpate him. If the jury believed he was home by 7:30 or 8:30 p.m., he could not have participated in the burglary which occurred between 9:30 and 10:30 p.m. as estimated in the police report. It thus provides no basis for reversal. See *Miles v. State*, 254 Ga. 266, 267 (3) (328 SE2d 535) (1985); *McCarty v. State*, 157 Ga. App. 336, 337 (3) (277 SE2d 259) (1981).

2. Appellant contends that the trial court erred in refusing to give his request to charge based on OCGA § 16-2-2, that one is not guilty of a crime if the act is committed by misfortune or accident.

Refusal to instruct on this principle was not error. The defense was that Gann did not participate in any manner in the burglary, accidentally, mistakenly, or otherwise. Therefore, such a charge was not supported by the evidence and potentially would have injected a defense theory not raised. See *Sampson v. State*, 165 Ga. App. 833, 834 (4) (303 SE2d 77) (1983).

3. The final question is whether the trial court erred in refusing to furnish Gann, an indigent, with a copy of the transcript of his first trial, which ended in a mistrial due to inability of the jury to reach a verdict. He also cites error in the court's refusing to continue the case until the transcript could be obtained, and in continuing to refuse to furnish that transcript for inclusion as part of the record on appeal.

He claims that the lack of a transcript severely hampered him in cross-examination and attempted impeachment of the State's witnesses. Appellant raises the circumstance of his indigency and is correct in observing that "[a]n indigent defendant should not be denied justice because he cannot afford to pay the costs of preparing a transcript which another defendant could pay for himself." See *Britt v. North Carolina*, 404 U. S. 226 (92 SC 431, 30 LE2d 400) (1971). However, he does not claim that he would have received different treatment if he had not been indigent and does not raise an equal protection challenge under either the federal or state constitution.

He relies upon the authority of *Carter v. State*, 156 Ga. App. 633, 634 (5) (275 SE2d 716) (1980), and *Coaxum v. State*, 146 Ga. App. 370, 371 (4) (246 SE2d 403) (1978). The immediate question then is whether he showed that the transcript was "needed for an effective defense" in the second trial, *Britt* at 227, or, in words quoted in *Wise v. Skinner*, 244 Ga. 225 (259 SE2d 475) (1979), " 'some justification or showing of necessity beyond a mere naked demand for a transcript.' "

At the hearing soon after the mistrial, defendant sought a transcript of the testimony of all the witnesses. The reason he gave was that "there is going to be some material discrepancies between the testimony and (sic) the witnesses. And we want to impeach them. . . ." Nothing further was advanced and there was no amplification.

The court denied the motion, having expressly considered the re-

centness of the first trial, its average length, the lack of any real complexity and the fact that all of the witnesses were interviewed by defendants as well as by the State. A transcript is not always necessary, even for the purposes stated by defendant, as the same may be accomplished by less costly and delaying means. See *Britt*, supra; *Powers v. State*, 163 Ga. App. 770 (2) (294 SE2d 555) (1982); *Walker v. State*, 156 Ga. App. 478, 480 (2) (274 SE2d 680) (1980).

OCGA § 17-8-5 (b) provides that in the event of a mistrial of a felony, ordering that a transcript of the testimony be filed with the clerk of court is a matter of discretion of the judge. This differs from OCGA § 5-6-41 (a), which requires that the transcript in felony cases "shall" be reported and prepared pursuant to OCGA § 17-8-5 or as otherwise provided by law. Subsection (j) states that "[i]n all cases, civil or criminal, any party may as a matter of right have the case reported at his own expense."

We assume, but do not decide, that defendant on the general basis which he gave was entitled to the transcript so that providing it was not subject to discretion. That is, that defendant justified the request and sufficiently established the need. See *Coaxum*, supra, which, although it did not involve OCGA § 17-8-5 (b) and the transcript of a mistried case, indicates that maintaining that the transcript of a co-defendant's trial was essential for purposes of impeaching the testimony of victims was sufficient to require a continuance. The record in *Carter*, supra at 634 (5), shows that it involved the transcript of an earlier trial on other offenses. It appears that the necessity was adequately established by stating that it was for purposes of cross-examination and impeachment of witnesses, some of whom were expected to testify at the second trial. The showing of need or justification was pivotal in *Chance v. State*, 172 Ga. App. 299, 303 (7) (322 SE2d 741) (1984), which did involve a mistrial transcript. The need expressed in *Martin v. State*, 151 Ga. App. 9, 15 (7) (258 SE2d 711) (1979) is the same as the one advanced by defendant.

The question then is, was he harmed or was he able to accomplish in some other way what he wished to accomplish with the transcript.

Appellant argues that he needed the mistrial transcript first of all to point out discrepancies in the victim's testimony. But we do not see how harm resulted because review of the trial, which occurred the next week, shows that the defense was aware of and questioned the victim about such discrepancies and that the victim admitted them and then went on to explain them. So the transcript as a tool for impeachment was unnecessary in this instance, since the witness in effect agreed that the inconsistency in his testimony would have been proven by the transcript.

According to his brief on appeal, defendant also wanted the tran-

script for the purpose of impeaching Carl Jones, Margaret Tosh, Darlene Jones, and Cecil Jones. The men were involved in the burglary. Tosh, who was Harris' mother-in-law and Gann's sister-in-law, was at the Harris house. Darlene Jones, Carl's wife, was at Gann's trailer the entire day. Defendant did elicit from Carl Jones an admission that he made a prior inconsistent statement "at one time," but it was not asked whether this was prior testimony or under oath or when. At any rate, if it occurred in the first trial, the transcript would not have proved more than Carl Jones admitted.

As to Cecil Jones, defendant elicited an admission that he had lied during his guilty plea proceeding. Thus the mistrial transcript was irrelevant. As to Margaret Tosh, he contends that she did not see Gann go into the victim's house or come back with anything or even go across the road. She admitted these facts. Appellant does not contend that she testified otherwise in the mistrial. As to Darlene Jones, appellant asserts that he wanted to show a bias because Carl was her husband. He did so, by his cross-examination.

Appellant fails to point to any material testimony, even in a general way, which could have been impeached by use of the mistrial transcript. Nor does he point to any other unmet need which would have been fulfilled by the transcript. At no time during the trial, except as stated above, did he suggest that prior testimony was different or that he needed the mistrial transcript because of what was stated at the trial in progress.

Where no harm is shown, there is no reversible error. See, e.g., *Lane v. State*, 247 Ga. 19 (2) (273 SE2d 397) (1981); *Stowers v. State*, 143 Ga. App. 859, 860 (1) (240 SE2d 227) (1977).

Having so ruled, the errors enumerated regarding denial of the motion for a continuance for preparation of the transcript and the denial of that transcript for the purpose of this appeal are moot.

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED JANUARY 30, 1989.

*Bennett & Hamilton, Hubert E. Hamilton III*, for appellant.
*David L. Lomenick, Jr., District Attorney*, for appellee.