A89A1570. FINE et al. v. APAC-GEORGIA, INC. et al.
(386 SE2d 692)

BANKE, Presiding judge.

The appellants' decedent was killed when an automobile in which he was a passenger hydroplaned on wet pavement, turned broadside into its lane of traffic, and was struck by a flatbed wrecker which had been following behind it. The appellants brought this wrongful-death action against the appellees herein — two highway contractors who had been performing work at the location in question — alleging that these contractors had breached a duty to the members of the traveling public "by negligently and recklessly engaging in acts and omissions such as allowing [a] pond of water to occur on the roadway, by failing to drain the water after it accumulated, by failing to warn motorists of the existence of the water, by failing to have a proper drainage plan for the construction zone, and by failing to maintain the drainage system that existed."

In addition to other damages, the appellants sought to recover the expenses of administering the decedent's estate in the approximate amount of $5,000,000, some $1,800,000 of which they had evidently paid to themselves as executors' commissions. They also sought to recover approximately $25,000,000 in estate taxes paid by the estate or, in the alternative, to recover approximately $2,000,000 in taxes which allegedly could have been saved had not the decedent's untimely death prevented him from performing adequate estate planning. This appeal is from the trial court's grant of summary judgment to the appellees on the issue of liability.

The accident occurred at approximately 1:10 p.m. on March 13, 1986, at the junction of Interstate Highways 75 and 85 south of Atlanta. It had rained heavily that morning, and a light rain continued to fall at the time of the accident. Because of the rain, the appellees had not engaged in any construction activities at the site on the day in question. The driver of the decedent's vehicle testified that his car began to hydroplane uncontrollably as he proceeded under a bridge and around a slight curve. However, he further testified that he did not recall having seen any water standing in the roadway or having heard any such water hitting up under the bottom of the car.

In support of their respective motions for summary judgment, each appellee submitted the affidavit of the project manager in charge of its construction activities at the location in question. In those affidavits, which were virtually identical, the project managers averred that the work being performed at the site was being performed pursu-

ant to the plans and specifications of the Georgia Department of Transportation (DOT); that "all drainage structures for which [the respective appellees] had responsibility" had been "inspected, cleaned, repaired and maintained . . . up to and through [the date of the accident] according to plans and specifications, and directions of the [DOT]"; that the respective appellees had no knowledge prior to the accident "of any automobile accidents, if any, at or around the area of the Interstate 85 overpass on Interstate 75 where [the] decedent was killed"; and that they had "no knowledge of any pond or accumulation of water, if any, . . . in the roadway at the accident site prior to the accident." The appellants responded with the affidavit of a motorist who had traversed the same stretch of highway approximately two hours prior to the accident and who had observed at that time an accumulation of water underneath the bridge in question, extending "across the entire right-hand lane of traffic and into the left-hand lane." This witness stated that his vehicle had also hydroplaned at this location, causing him "almost [to lose] control of the car." He further stated that as he was driving back by this location approximately two hours later in the opposite direction, he observed that a "collision had apparently occurred at the site where I had hydroplaned, as there was a damaged car and flatbed wrecker stopped at the site and a policeman directing traffic."

While ruling that the foregoing affidavit raised a fact issue "as to whether a pond of water did exist on the roadway," the trial court nevertheless granted the appellees' motion for summary judgment, based on a further determination that the appellants had failed to produce any evidence either that the appellees had caused this accumulation of water to occur or that it had been this accumulation of water which caused the accident. The appellants contend on appeal that the trial court thereby erroneously shifted to them, as respondents on motion for summary judgment, the burden of coming forward with evidence to support the allegations of their complaint, rather than placing the burden on the appellees, as movants, of piercing those allegations. *Held*:

1. Because the evidence established without dispute that it had been raining heavily earlier during the day but that only a light drizzle was falling at 1:30 p.m., when the accident occurred, and because the decedent's driver testified repeatedly that he had neither seen any water standing in the roadway at the location in question nor heard any water "hitting up under the bottom of [the] car," we do not believe that the evidence that a puddle of water was present on the road two hours before the accident can be considered sufficient, in and of itself, to give rise to an inference that such a condition still existed at the time of the accident. No testimony to that effect was elicited from anyone who was present at the scene during or immediately following

the accident, including the other driver involved in the collision and the police and emergency medical personnel who later arrived at the scene. While there is a police report in the record which reflects the existence of an accumulation of water in the roadway at the location where the accident occurred, there is no indication in this report that the officer who prepared it observed such an accumulation himself. Moreover, no foundation was laid for the admission of this report as evidence. "A police report may be admissible as a business entry . . . where a proper foundation is laid, but when it includes hearsay statements, opinion evidence, and conclusions, it is not generally admissible." *Pickett v. State*, 123 Ga. App. 1 (2) (179 SE2d 303) (1970). Compare *Stubbs v. Daughtry*, 115 Ga. App. 22 (1) (153 SE2d 633) (1967) (holding that the admission of such a report could not be considered reversible error where the officer who had prepared it was present in court and testified personally regarding the observations and opinions contained therein). It follows that the only probative evidence of record in this case regarding the presence or absence of standing water on the highway at the time of the accident is the testimony of the decedent's driver, who stated unequivocally that he neither saw nor otherwise perceived any such accumulation.

2. Even assuming arguendo that a fact issue exists as to whether there was a puddle of water in the roadway at the location and time of the accident, the appellees were entitled to summary judgment based on the absence of any evidence that the existence of this condition could have been anticipated or prevented by them through the exercise of due care. As previously indicated, the affidavits submitted by the appellees' project managers established without dispute that the appellees had not participated in the design of the improvements but had merely implemented the design specifications of the DOT. These affidavits further established without dispute that the appellees had "inspected, cleaned, repaired and maintained all drainage structures for which [they] had responsibility up to and through [the date of the accident] according to the plans and specifications, and directions of the [DOT]," and also that the appellees had received no notice of any accumulation of water at the location in question prior to the accident. It has been held that a contractor on a state highway project normally cannot be held liable for injuries to the public resulting from the non-negligent performance of the DOT's specifications and directives. See *C. W. Matthews Contracting Co. v. Marasco*, 184 Ga. App. 150, 151 (361 SE2d 34) (1987). Accordingly, the affidavits submitted by the appellees' project managers must be considered sufficient to pierce the allegations of negligence contained in the appellants' pleadings and to shift to them the burden of coming forward with at least some evidence to support those allegations. Id. See also *PPG Indus. v. Genson*, 135 Ga. App. 248 (217 SE2d 479) (1975).

We find the appellants' reliance on *Parlato v. MARTA*, 165 Ga. App. 758 (1) (302 SE2d 613) (1983), as authority for a contrary conclusion to be inapposite. The plaintiffs in that case alleged that a government contractor had negligently undermined the foundations of their buildings during the performance of the contract, thereby causing the buildings to crack and settle. The contractor moved for summary judgment on the basis of the affidavit of a construction superintendent who, though he had not worked on the project throughout the entire period of construction, averred that all of the work on the project had been done "using reasonable care in accordance with proper, generally accepted construction methods, in a workmanlike manner, and in accordance with the plans and specifications of our contract." These averments were held insufficient to negate the allegations of negligence contained in the complaint, both because they amounted to nothing more than a conclusory denial of such negligence and because the affiant had not worked on the project from its inception and thus was not in a position to know whether all of the work had been performed in a non-negligent manner. In contrast, the project managers whose affidavits are at issue in the present case averred without dispute that they had worked on the project from its inception. Moreover, their averments amount to more than a conclusory denial that the appellees were guilty of any negligence whatever in connection with the construction; they specifically address the appellants' allegations of negligence with regard to the design and maintenance of the drainage system at the specific location and time under consideration.

We similarly find nothing in the remaining cases cited by the appellants which can be considered authority for their position that the appellees' affidavits were ineffective to shift to them the burden of coming forward with some modicum of evidence in support of the allegations of negligence contained in the complaint. In *Mica-Top Fixture Co. v. Frank G. Shattuck Co.*, 124 Ga. App. 100 (1) (183 SE2d 15) (1971), we held that the affidavit of a corporate official to the effect that his company had not had any dealings with the plaintiff was insufficient to rebut the plaintiff's contrary allegation, where the affidavit neither recited that it was based on personal knowledge nor revealed the factual basis for the averment in question. The issue in *Lockhart v. Beaird*, 128 Ga. App. 7 (195 SE2d 292) (1973), was whether certain averments by a car owner detailing the steps he had taken to keep his vehicle in running condition necessarily established that he had used due care in this regard in the face of evidence that he had been forced to abandon the vehicle on the highway following simultaneous tire and mechanical failure. The affidavits in the present case do contain a showing that they are based on personal knowledge; and, while there is no set standard regarding what constitutes

due diligence in maintaining a motor vehicle, it has been held that a building contractor cannot normally be held liable to third persons for injuries caused by design defects " 'if he follows the directions given him and is not guilty of negligence in the particular manner in which he performs the specific work he contracted to do.' " *PPG Indus. v. Genson*, supra, 135 Ga. App. at 251, quoting from *Bell & Son v. Kidd & Roberts*, 5 Ga. App. 518, 520 (63 SE 607) (1908). We accordingly hold that the trial court did not err in granting the appellees' motion for summary judgment in the present action.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED SEPTEMBER 7, 1989 —
REHEARING DENIED SEPTEMBER 25, 1989 — 

*Kilpatrick & Cody, Matthew H. Patton, Judith A. Powell*, for appellants.

*Thomas F. Allgood, Jr., Scoggins, Ivy & Goodman, Charles H. Ivy, George H. Duncan, Jr., Luke A. Kill*, for appellees.