## S00G1809. BROWN v. THE STATE.
### (549 SE2d 107)

BENHAM, Justice.

On January 27, 1996, an anonymous informant called 911 and reported that a black male in a purple hat, black leather coat, and blue jeans was dealing drugs from a white automobile in an apartment complex. An officer dispatched to the site in response to the 911 call testified that he saw a man meeting the description standing next to a white car. The officer detained the man, later identified as appellant Fred Brown, based on the description.

A second officer dispatched to the scene found 58 hits of crack cocaine in plain view on the back seat of the white car. Through the car's license tag, the second officer learned that the car was registered to appellant. The car was inoperable, with one of its back windows broken out, and had been sitting in the parking lot for over a year. Appellant was indicted for possession of cocaine with intent to distribute.

At trial, the officer who arrested appellant was permitted to testify over appellant's hearsay objection with respect to the description of the alleged drug dealer, as relayed to him by the dispatcher who had spoken with the anonymous informant, for the purpose of explaining the officer's conduct in arresting appellant. An officer not

involved in the 1996 incident testified to appellant's 1990 conviction for possession of crack cocaine. Though present when appellant was arrested in 1990, this officer had no independent recollection of the incident. The trial court allowed the officer to lay the foundation and read the narrative portion of the 1990 police report of the incident under the business records exception to the hearsay rule, even though he had not prepared the report. Appellant was convicted of the 1996 charge after the deadlocked jury received an *Allen* charge. The Court of Appeals affirmed appellant's conviction in *Brown v. State*, 245 Ga. App. 149 (537 SE2d 421) (2000). We granted certiorari to answer two questions regarding the trial court's admission of testimony read from a police report and the admission of hearsay testimony given by the officer who arrested appellant.[1]

1. First we address whether the trial court erred in allowing, as evidence of a similar transaction, the narrative portion of the police report of appellant's 1990 arrest to be read into evidence under the business records exception to the hearsay rule. Without the admission of the 1990 police report, the State did not meet its burden under *Williams v. State*, 261 Ga. 640 (2) (409 SE2d 649) (1991) for admitting evidence of a similar transaction since the State did not present evidence to establish a sufficient connection or similarity between the independent offense and the crime charged such that proof of the former tended to prove the latter. The only evidence linking appellant to the 1990 crime was a certified conviction, which is insufficient, standing alone, to establish the required nexus. *Stephens v. State*, 261 Ga. 467 (6) (405 SE2d 483) (1991).

OCGA § 24-3-14 allows admission, under the business records exception, of

[a]ny writing or record . . . made as a memorandum or record of any act, transaction, occurrence, or event . . . if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.

---

[1] The two questions are as follows:

1. Did the Court of Appeals err in upholding the trial court's admission of evidence under an exception to the hearsay rule to explain the conduct of a police officer in apprehending a suspect in response to an anonymous tip, and in considering that evidence in determining the sufficiency of the evidence to uphold petitioner's conviction?; and

2. Did the Court of Appeals err in upholding the trial court's admission of a police report under the business records exception to the hearsay rule for purposes of demonstrating a similar transaction where the report contained a description of an incident prepared by an officer who did not testify at trial?

This Court has had occasion to address the characteristics a document should have to be considered a business record. In *Martin v. Baldwin*, 215 Ga. 293 (110 SE2d 344) (1959), we addressed the admissibility of medical records under the business records exception. We stated that evidence admitted under the business records exception should be "routine facts" whose accuracy is not affected by "bias, judgment, and memory." *Martin*, supra at 299. We also noted that the danger in admitting certain types of evidence of an event is that the organization will gain the opportunity to "use self-serving statements without the important test of cross-examination" and noted that "[c]ross-examination is unimportant in a case of systematic routine entries made by a large organization where skill of observation or judgment is not a factor." Id. Some information recorded by police officers cannot be said to be "routine facts," since the facts and circumstances surrounding every arrest vary widely. Police work by its very nature is adversarial and police investigations are inherently accusatorial. Complete accuracy in recording the sensitive facts involved in police investigations is not easily attained by even the most objective observer. Many of the incidents which police investigate involve human attitudes and emotions which are subjective in nature and susceptible to many interpretations.

Law enforcement officers have a difficult task to perform in investigating allegations of criminal conduct. The investigations themselves are fraught with numerous obstacles and hardships. Further, the information collected by police officers frequently consists of circumstances that are neither easily definable nor entirely concrete. Unlike the business world where objective information may be gathered in the stream of commerce, police work is often heavily influenced by the beliefs, impressions, and, at times, hunches of the investigating officer. It is because of these difficulties that police report narratives do not fit easily within the business records exception to the hearsay rule.

Thus, while the narrative portion of a police report may meet the technical requirements of the statute, it does not have the reliability inherent in other documents that courts have traditionally considered to be business records. We conclude that the narratives contained in police reports generated in connection with police investigations are not the appropriate subject of an exception to the hearsay rule.[2] Based on the foregoing, we conclude that the evidence con-

---

[2] We do not address the admissibility of other information not contained in the narrative of the police report. Certain information, such as the time, date and location of an arrest, may be properly admitted under the business records exception under our analysis. Other information that requires the reporting officer to make a conclusion or express an opinion is not admissible. However, since only the narrative portion was read into evidence

tained in the police report narrative were not facts that should properly be admitted under the business records exception to the hearsay rule. Accordingly, we conclude that the trial court erred when it allowed a police officer to read into evidence the narrative portion of a police report of which he had no personal knowledge and did not prepare, and the Court of Appeals erred in affirming that ruling. In doing so, the Court of Appeals relied on several opinions from that court that hold that a police report may be admissible as a business entry where a proper foundation is laid, but is generally inadmissible when it includes hearsay statements, opinion evidence, and conclusions. *Gann v. State*, 190 Ga. App. 82 (1) (378 SE2d 369) (1989); *Reed v. Heffernan*, 171 Ga. App. 83 (1) (318 SE2d 700) (1984); *Johnson v. State*, 168 Ga. App. 271 (1) (308 SE2d 681) (1983); *Pickett v. State*, 123 Ga. App. 1 (2) (179 SE2d 303) (1970). To the extent these cases or any other cases hold that a police report narrative like the one at issue is admissible as a business record, they are overruled. *Johnson v. State*, 247 Ga. App. 660 (3) (544 SE2d 496) (2001); *Shoney's, Inc. v. Hudson*, 218 Ga. App. 171 (1) (460 SE2d 809) (1995); *Curtis v. State*, 190 Ga. App. 173 (2) (378 SE2d 516) (1989); *Fine v. APAC-Georgia*, 192 Ga. App. 895 (1) (386 SE2d 692) (1989); *Johnson v. Dallas Glass Co.*, 183 Ga. App. 584 (2) (359 SE2d 448) (1987); *Jones v. Davis*, 183 Ga. App. 401 (2) (a) (359 SE2d 187) (1987); *Estes v. State*, 165 Ga. App. 453 (2) (301 SE2d 504) (1983); *Bramblett v. State*, 139 Ga. App. 745 (4) (229 SE2d 484) (1976); *Calhoun v. Chappell*, 117 Ga. App. 865 (2) (162 SE2d 300) (1968); *Stubbs v. Daughtry*, 115 Ga. App. 22 (153 SE2d 633) (1967).[3]

The United States Supreme Court addressed a similar situation in *Palmer v. Hoffman*, 318 U. S. 109 (1) (63 SC 477, 87 LE 645) (1943), which dealt with the admissibility of railroad accident reports as business records under a federal statute analogous to the Georgia statute. Like police reports, railroad accident reports were also asserted to be made in the regular course of business because it was the duty of a railroad employee to prepare an account of every acci-

---

in this case, we need not address this issue further.

[3] Several states have prohibited or strongly disapproved the admission of police reports under the business records exception to the hearsay rule when offered by the state. *Reeves v. King*, 534 S2d 1107, 1114 (Ala. 1988); *Wilson v. State*, 756 P2d 307, 312 (Alaska 1988); *Wallin v. Ins. Co. of North America*, 268 Ark. 847, 852 (596 SW2d 716) (1980); *Bolin v. State*, 736 S2d 1160, 1167 (Fla. 1999); *People v. Gayton*, 293 Ill. App. 3d 442, 444 (688 NE2d 1206) (1997); *Bacher v. State*, 686 NE2d 791, n. 4 (Ind. 1997); *State v. Smith*, 594 S2d 467, 476 (La. 1991); *Solomon v. Shuell*, 435 Mich. 104, 139 (457 NW2d 669) (1990); *Snyder v. Portland Traction Co.*, 182 Ore. 344, 351 (185 P2d 563) (1947); *State v. Bertul*, 664 P2d 1181, 1184 (Utah 1983). See also *Montgomery v. United States*, 517 A2d 313, 316 (D.C. 1986) (distinguishing between police reports that are prepared in the anticipation of litigation and those that merely record routine facts that are used primarily for internal administrative purposes).

dent that occurred and because the practice was related to the operation of the railroad. Also similar to police reports, the railroad accident reports contained a narrative prepared by an employee describing an incident. The Court refused to consider the railroad accident reports as business records even though they technically were made in the regular course of business, focusing more on the "earmarks of reliability [cit.] acquired from their source and origin and the nature of their compilation" rather than on the "regularity of preparation" of the reports. Id. at 114. The Court noted that while the accident reports "may affect the business in the sense that it affords information on which the management may act," the reports were not "typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls." Id. at 113.

> [T]he fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made "in the regular course" of the business within the meaning of the Act. If it did, then any law office in the land could follow the same course, since business as defined in the Act includes the professions. We would then have a real perversion of a rule designed to facilitate admission of records which experience has shown to be quite trustworthy. . . . We cannot so completely empty the words of the Act of their historic meaning. If the Act is to be extended to apply not only to a "regular course" of a business but also to any "regular course" of conduct which may have some relationship to business, Congress not this Court must extend it. Such a major change which opens wide the door to avoidance of cross-examination should not be left to implication.

Id.

Were we to conclude that the police report narrative in this case were admissible, serious public policy implications would result. As noted in the dissent to the majority of the Court of Appeals in this case:

> If the majority is correct on this point, a major alteration in the administration of our system of criminal prosecutions may result. Because almost all prosecutions are based on incidents in which witness statements are taken and those, along with police officers' statements, are made part of some police agency's reporting system, it is reasonable to expect

that in the future it might be the rare case in which the witnesses actually come to court and testify.

245 Ga. App. at 157. Such a practice would run afoul of the accused's rights to confrontation mandated under the U. S. Constitution. See *Ohio v. Roberts*, 448 U. S. 56 (100 SC 2531, 65 LE2d 597) (1980); see *Livingston v. State*, 268 Ga. 205 (2) (486 SE2d 845) (1997) ("Out-of-court statements which fall within a firmly-rooted hearsay exception are deemed to satisfy the constitutional requirement of reliability usually provided by a witness's oath-taking and subjection to cross-examination because such an exception is the result of judicial and legislative experience assessing the trustworthiness of that type of out-of-court statement.")

Thus, the Court of Appeals erred in upholding the trial court's ruling permitting the officer's reading of the police report narrative into evidence for purposes of demonstrating a similar transaction and in considering the similar transaction in determining the sufficiency of the evidence supporting appellant's conviction. Accordingly, we reverse the Court of Appeals on this issue.

2. Finally, we consider whether the Court of Appeals erred in upholding the trial court's admission of the testimony of the officer who arrested appellant in 1996 with respect to the information he was given regarding the anonymous tip. The trial court admitted the testimony under an exception to the hearsay rule to explain the conduct of the police officer in apprehending appellant. OCGA § 24-3-2 provides "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." In *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982), this Court adopted the principle that hearsay testimony is admissible to explain the conduct of an actor where the actor's conduct and motive are matters concerning which the truth must be found. In *Teague v. State*, 252 Ga. 534, 536 (314 SE2d 910) (1984), this Court further expounded upon the principle discussed in *Momon* and held that only in rare instances will the conduct of an investigating officer need to be explained, reasoning that:

in practically every case, the motive, intent, or state of mind of such an officer will not be "matters concerning which the truth must be found." At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something. If the hearsay rule is to remain a part of our law, then OCGA § 24-3-2 (Code Ann. § 38-302) must be contained within its proper limit. Otherwise, the repeti-

tion of the rote words "to explain conduct" can become imprimatur for the admission of rumor, gossip, and speculation.

The principle expressed in *Teague* was reiterated in *Weems v. State*, 269 Ga. 577 (2) (501 SE2d 806) (1998), where we instructed that police conduct is not a relevant issue even where the conduct may be "so inexplicable as to cast doubt on the prosecution" or where "a confidential informant has provided information which initiates an investigation." Finally, recently we restated these principles in *White v. State*, 273 Ga. 787 (546 SE2d 514) (2001), where we concluded that an officer's testimony that a witness made an identification in a lineup was not admissible as original evidence to explain conduct. Based on these principles, we conclude that the conduct of the officer who arrested appellant was not one of those rare instances in which the conduct of the officer needs to be explained. Compare *Greene v. State*, 266 Ga. 439 (25) (469 SE2d 129) (1996) (overruled on other grounds in *Greene v. Georgia*, 519 U. S. 145 (117 SC 578, 136 LE2d 507) (1996)) (hearsay testimony was admitted to explain the conduct of a sheriff in employing additional security measures to detain defendant at trial as well as to rebut evidence of defendant's good behavior in prison); compare *George v. State*, 242 Ga. App. 580 (3) (530 SE2d 479) (2000) (hearsay testimony was admitted to explain the conduct of a police officer in arresting a suspect for DUI where the defendant asserted the officer fabricated the DUI charge in retaliation for not pursuing felony charges against another suspect earlier in the day). Thus, the Court of Appeals erred when it affirmed the trial court's admission of the hearsay testimony.

From the summary of the evidence set forth by the Court of Appeals (245 Ga. App. 149) it appears that the erroneously admitted hearsay was used in considering whether the evidence was sufficient to support the conviction. This was error since hearsay cannot be considered in determining the sufficiency of the evidence supporting a conviction. See *Livingston*, supra. Even if the hearsay had been properly admitted to explain conduct, such evidence is admissible as original evidence solely to explain conduct and not as original evidence of guilt. *Anderson v. State*, 247 Ga. 397 (1) (276 SE2d 603) (1981); *Harrell v. State*, 241 Ga. 181 (1) (243 SE2d 890) (1978). Given our disposition on the issue of the admissibility of the police report under the business records exception, we need not reach the issue of whether the admission of the hearsay testimony to explain the conduct of the police officer was reversible error.

*Judgment reversed. All the Justices concur.*

CARLEY, Justice, concurring.

I agree that the business records exception to the hearsay rule

does not apply to the narrative portion of the police report at issue, and that the Court of Appeals erroneously affirmed the trial court's admission of other hearsay testimony as relevant to explain the conduct of a police officer. I also acknowledge that the majority has expressly held that it does not "address the admissibility of other information not contained in the narrative of the police report." However, because I believe that certain portions of police reports can be admissible in criminal cases, I take this opportunity to reflect upon holdings of other jurisdictions with regard to this issue. Also, because I cannot agree with the majority's characterization of police work as "adversarial" and "inherently accusatorial," I concur only in Division 2 and in the judgment of reversal.

The mere "fact that their preparation was incidental to a police [investigation] does not make them inadmissible ([cits.])." *People v. Guidice*, 634 NE2d 951, 953 (N.Y. 1994). The courts of this state have correctly presumed the honesty, integrity, and reliability of law enforcement officers. *Whitlock v. State*, 230 Ga. 700, 705 (4) (198 SE2d 865) (1973); *Williams v. State*, 239 Ga. App. 671, 672 (522 SE2d 43) (1999). The exclusion of certain police reports as hearsay is not properly based upon exaggerated deficiencies of police investigations, such as those set forth by the majority, but rather on the right of the accused, with respect to a report which is prepared partly in contemplation of prosecution, to cross-examine the author regarding the motivation and accuracy of his perception and recall, the manner of language usage, and the soundness of his conclusions. *State v. Bertul*, 664 P2d 1181, 1185 (Utah 1983) (cited in footnote 3 of the majority opinion).

Most courts have refused to apply *Palmer v. Hoffman*, 318 U. S. 109 (63 SC 477, 87 LE 645) (1943) "to police reports proffered as business entries when the reports relate to 'routine, nonadversarial matters' such as the recordation of license plate or serial numbers." 1 Imwinkelried, Giannelli, Gilligan & Lederer, Courtroom Criminal Evidence § 1220, p. 413 (3d ed. 1998). See also *United States v. Brown*, 9 F3d 907, 911-912 (II) (B) (11th Cir. 1993); *People v. Guidice*, supra at 953; *Montgomery v. United States*, 517 A2d 313, 316 (II) (D.C. 1986) (cited in footnote 3 of the majority opinion); *State v. Best*, 703 P2d 548, 550-551 (Ariz. App. 1985); *State v. Bertul*, supra at 1184, 1185-1186.

> Many courts . . . have drawn a distinction between police records prepared in a routine, non-adversarial setting and those resulting from a more subjective investigation and evaluation of a crime. [Cits.] . . . "In the case of documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency, the

factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present.

*United States v. Brown*, supra at 911 (II) (B). "Merely identifying a person who was arrested is not subject to the dangers of inadequate perception, memory or narration, while reporting details of a criminal investigation is subject to such dangers." *State ex rel. Mack v. Purkett*, 825 SW2d 851, 856 (Mo. 1992). Other examples of admissible police records of routine matters include the day a crime was reported, fingerprint records, and a form for police officers to document the condition of police vehicles and to provide a skeletal outline of each day's activities. *Montgomery v. United States*, supra at 316 (II); *State v. Bertul*, supra at 1184. Such police records serve an important administrative function, and their future use in litigation, although foreseeable, is not the sole purpose for their preparation. *People v. Guidice*, supra at 953; *Montgomery v. United States*, supra at 316 (II).

The police report in question here contains a detailed narrative concerning a prior undercover purchase of cocaine. *Brown v. State*, 245 Ga. App. 149, 151 (2) (c) (537 SE2d 421) (2000). Because that narrative is clearly not a routine, nonadversarial, or administrative matter, it is not admissible under the business records exception. Therefore, the majority correctly reverses the Court of Appeals' holding to the contrary.

I am authorized to state that Justice Hunstein and Justice Hines join in this opinion.

DECIDED JULY 2, 2001.

*Lynn M. Kleinrock*, for appellant.
*J. Tom Morgan III, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.