A97A2365. BUNN et al. v. LANDERS et al.
(498 SE2d 109)

Pope, Presiding Judge.

Plaintiffs William Bunn and Debra Bunn are the surviving parents of Nathan Bunn. After Nathan was killed while riding in a go-cart, they brought a wrongful death action against the driver of the go-cart, defendant Dusty Dunbar; his parents, defendants James Dunbar and Denise Dunbar; his paternal grandmother, defendant Helen Landers; and both of his maternal grandparents, defendants Hazel Nix and Douglas Nix. The trial court granted summary judgment to all of the defendants. On appeal, the Bunns contend that the trial court erred in granting summary judgment to Dusty's parents and grandparents. They do not, however, appeal the grant of summary judgment to Dusty. Upon review, we affirm.

Construed most favorably to the Bunns, the facts of this case demonstrate that on July 5, 1995, Helen Landers took Dusty to visit Nathan at his home. After the visit, Landers asked for and received permission from the Bunns to take Nathan with her and Dusty to the Nixs' residence. Once there, Dusty and Nathan, both of whom were nearly nine years old, went into a front room to play while Landers and Mrs. Nix stayed in the kitchen in the back of the house, talking and drinking coffee. Shortly thereafter, Dusty and Nathan went outside through the front door and began riding a go-cart owned by Dusty's father, James. Dusty drove and Nathan rode as a passenger. During this time, Dusty entered the road in front of the Nixs' home and collided with a car driven by a person who is not a party to the underlying lawsuit. The collision resulted in Nathan's death.

1. The Bunns contend that the trial court erred in determining that no issue of material fact existed regarding the Nixs' liability for Nathan's death, and thus, in granting the Nixs' motion for summary judgment. We disagree.

The undisputed facts of this case demonstrate that at the time of his death, Nathan was a social guest at the Nixs' residence. As a social guest, Nathan was a licensee and not an invitee. *Bowers v. Grizzle*, 214 Ga. App. 718, 720 (4) (448 SE2d 759) (1994); *Riley v. Brasunas*, 210 Ga. App. 865, 866 (1) (438 SE2d 113) (1993). Under Georgia law, a property owner is liable only for wilful and wanton injuries caused to a licensee. OCGA § 51-3-2 (b); *Bowers*, 214 Ga. App. at 720 (4); *Riley*, 210 Ga. App. at 867 (1). As the trial court determined, there is no evidence in this case demonstrating any wilful or wanton act or omission on the Nixs' part that caused Nathan's tragic death.

It is undisputed that the go-cart was not owned by the Nixs, and that at the time of the accident, Mr. Nix was not even at home. Although Mrs. Nix was at home, she specifically testified by affidavit

and in her deposition that she believed Nathan and Dusty were playing inside the house and never heard them leave or use the go-cart. Contrary to the Bunns' contention, there is nothing more than speculation and conjecture in the record to suggest otherwise. Nor is there more than mere speculation and conjecture that Mrs. Nix had given permission to the children to go outside and ride the go-cart, or that she had any knowledge that Nathan and Dusty had a desire to do so. Such speculation and conjecture is insufficient to create even an inference which would bar summary judgment in favor of the Nixs. See *Taylor v. N.I.L., Inc.*, 221 Ga. App. 99, 100 (470 SE2d 491) (1996); *Brumbelow v. City of Rome*, 215 Ga. App. 321, 322 (450 SE2d 345) (1994). And in the absence of evidence that Dusty had a propensity to leave the house and use the go-cart without permission or supervision, Mrs. Nix was not required to keep an unremitting watch and restraint over Dusty and Nathan, or the go-cart. Thus, her failure to do so also does not create a genuine issue of material fact as to the Nixs' liability in this case. See *Scarboro v. Lauk*, 133 Ga. App. 359, 361-362 (3) (210 SE2d 848) (1974).

Because there simply is no evidence that the Nixs breached any duty they owed to Nathan, the trial court properly granted their summary judgment motion. *Bowers*, 214 Ga. App. at 720 (4).

2. "When a person undertakes to control and watch over a young child, even without compensation, he becomes responsible for injury to the child through his negligence, and his duty to use reasonable care to protect the child is not measured by what his duty would have been to a social guest or licensee." (Citations and punctuation omitted.) *Riley*, 210 Ga. App. at 868 (2). "The measure of precaution that must be taken by one having a child in his care, who stands in no relation to the child except that he has undertaken to care for it, is that care which a prudent person would exercise under like circumstances. As a general rule, a person who undertakes the control and supervision of a child, even without compensation, has the duty to use reasonable care to protect the child from injury. Such person is not an insurer of the safety of the child. He is required only to use reasonable care commensurate with the reasonably foreseeable risk of harm." (Citations and punctuation omitted.) *Wallace v. Boys Club &c.*, 211 Ga. App. 534, 535 (1) (439 SE2d 746) (1993).

Applying the above principles to the case at bar, we agree with the trial court's determination that there is no evidence of record in this case of negligence on Landers' part. Like Mrs. Nix, in her affidavit and deposition testimony, Landers unequivocally states that at all times relevant she believed that Nathan and Dusty were playing in a front room at the Nixs' residence, and at no time did she hear them leave the house to ride the go-cart or hear them after they started riding it. Her testimony also demonstrates that she had no

knowledge that Nathan intended or wanted to ride the go-cart and that she never gave Nathan permission to do so, or even to leave the house. As was the case with Mrs. Nix, there is nothing in the record contrary to Landers' testimony amounting to more than mere speculation and conjecture. As stated in Division 1, such speculation and conjecture create no inference sufficient to bar summary judgment. See *Taylor*, 221 Ga. App. at 100; *Brumbelow*, 215 Ga. App. at 322.

Under the facts presented in this case, the only way that Landers could have prevented Nathan's death would have been to maintain a constant watch over him at all times. In light of Nathan's age and the lack of any evidence that Landers knew that he intended or even wanted to ride the go-cart, we must agree with the trial court that Landers' failure to maintain persistent vigilance and watch over Nathan does not amount to negligence. *Scarboro*, 133 Ga. App. at 361-362 (3). To hold otherwise would be to make Landers the insurer of Nathan's safety. Therefore, summary judgment in favor of Landers was appropriate.

3. Summary judgment also was proper with regard to Dusty's parents, James Dunbar and Denise Dunbar, neither of whom was present at the time of the accident. In this State, "parents [generally] are not liable in damages for the torts of their minor children merely because of the parent-child relationship; when liability exists it is based on a principal-agent or master-servant relationship where the negligence of the child is imputed to the parent, or it is based on the negligence of the parent in some factual situation such as allowing the child to have unsupervised control of a dangerous instrumentality." (Citations and punctuation omitted.) *Hawkins v. Skelly*, 212 Ga. App. 267 (441 SE2d 439) (1994); *Saenz v. Andrus*, 195 Ga. App. 431, 432 (2) (393 SE2d 724) (1990). "Where injury is caused by an instrumentality *made accessible* to the child by the parent, which if used properly is reasonably safe but which becomes a dangerous instrumentality when not properly handled, the question becomes one of ordinary negligence. Whether or not the parent exercised ordinary care to anticipate and guard against such misuse is thus frequently a jury question as in other negligence cases. Although recovery is permitted where through parental negligence a child *is permitted access* to an instrumentality which, if not properly used, is foreseeably likely to cause injury to a third person, this does not make the parent liable for an injury negligently inflicted by a child where there is no dangerous proclivity known to the former and no reason to anticipate the injury which in fact occurred." (Citation and punctuation omitted; emphasis in original.) Id.

In the instant case, as in *Saenz*, the evidence of record demonstrates that Mr. and Mrs. Dunbar neither furnished nor expressly permitted Dusty access to the go-cart, notwithstanding the fact that

the go-cart was left where access to it could be had. Id. at 433 (2). Under such circumstances, "the standard for imposing liability upon [the Dunbars] is whether [they] knew of [any] proclivity or propensity [on Dusty's part] *for the specific dangerous activity*. If such knowledge cannot be shown on the part of [the Dunbars], then liability cannot attach to [them], as [parents are] not [the insurers] that [their children] will not harm [others]." (Citations and punctuation omitted; emphasis in original.) Id.

Although it is true in this case that there is some evidence that Dusty had previously ridden as a passenger in the go-cart in the road while his older sister was driving, as the trial court determined, there is no evidence in the record to indicate that either Mr. or Mrs. Dunbar knew Dusty had a propensity for driving the go-cart without their permission or supervision, or that Dusty had a propensity to drive the go-cart in the road. And the Dunbars specifically stated otherwise by affidavit. Absent this knowledge, they had no reason to anticipate that Dusty would take the go-cart without permission or supervision and drive it into the road, and thus, no duty to guard against such an occurrence. Id.; *Hawkins*, 212 Ga. App. at 268.

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED FEBRUARY 24, 1998.

*Richard H. Bishoff*, for appellants.
*Alan W. Connell*, for appellees.

