A04A0813, A04A0814. OSMAN et al. v. OLDE PLANTATION APARTMENTS ON MONTREAL, LLC et al.; and vice versa.
(607 SE2d 236)

ADAMS, Judge.

Fatuma Ahmed Osman, individually, as the parent and guardian of Dofo Abdi Ali, a minor child, and as administrator of the estate of Farhiya Dakane Nur; Jabuti Abdi Ali; Mohamed Abdi Ali; Hanif Ali; Ayan Ali; and Abdikani Ali asserted negligence claims against Olde Plantation Apartments on Montreal, LLC and HMI Property Solutions, Inc.[1] Olde Plantation and HMI moved for summary judgment and the trial court granted the motion as to all claims, except those asserted by Fatuma Osman, individually. The plaintiffs appeal this grant of summary judgment, and Olde Plantation and HMI cross-appeal the denial of their motion for summary judgment as to Osman's individual claims.

When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence, and we "view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Brown v. All-Tech Investment Group*, 265 Ga. App. 889, 890 (595 SE2d 517) (2004). See also *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

The claims in this case arise from a fire that occurred at the Olde Plantation Apartments in DeKalb County. The plaintiffs are a family of refugees, who immigrated from Somalia via Kenya to the United States with the assistance of the World Relief Organization. Plaintiffs moved into Apartment 36D of the Olde Plantation Apartments on or about August 6 or 7, 1999. Apartment 36D is on the second story of a two-story building that contains four rental apartments, with a common foyer/stairwell in the center. The upstairs apartments, Apartments 36C and 36D, shared a common balcony in the rear of the apartment building. The occupants of Apartment 36D had access to the balcony through a sliding door, although there is evidence that only one or two of them had even gone onto the balcony in the week they lived there. Stairs ran from the balcony of Apartment 36C to the

---

[1] The plaintiffs also named HMI Enterprises, Inc. as a defendant in their lawsuit. The trial court granted summary judgment as to all claims against that defendant, but the plaintiffs do not appeal that judgment.

ground, and a wooden privacy fence, with a gate, separated the balcony between the two apartments. Thus, the occupants of Apartment 36D were required go through the gate in the privacy fence to reach the stairs. There is no evidence that any of the plaintiffs were aware of the gate or the stairs leading down to the ground prior to the night of the fire. Although there was evidence that the gate had a handle, Osman testified that she was unable to locate a handle on her side of the privacy fence the night of the fire. Plaintiffs base their negligence claims on their contention that the gate was nailed shut, thus preventing them from easily escaping the fire. They further contend that Olde Plantation and HMI knew or should have known of the gate's condition.

Before the plaintiffs moved into Apartment 36D, the unit had been vacant for approximately nine months. Michele Velazquez-Carter, who resided next door in Apartment 36C, began to notice problems with vandalism in the vacant apartment and the balcony area, and on or around April 26, 1999, her apartment was burglarized. Velazquez-Carter complained to Olde Plantation management, and she reported the matter to the police. Velazquez-Carter testified that the next day, the gate in the privacy fence between the two apartments was nailed shut. She concluded that the gate had been nailed shut because, previously, it had not closed properly, but rather stood ajar. When she came home from work that day, she noticed that the gate was completely closed, and she observed nail heads on her side of the fence. Velazquez-Carter never tried to open the gate; she just "jiggled" it to confirm it was secure. Because she worked during the day, Velazquez-Carter was unaware whether any work was done to the balcony, the gate or Apartment 36D between the time she observed that the gate had been nailed shut and the time the plaintiffs moved in. But she testified that she believed that the gate remained nailed shut up through the night of the fire, because she would have noticed something different about the gate if it had been opened or repaired in the interim. She did not, however, try to open the gate the night of the fire.

On July 16, 1999, before the plaintiffs moved into Apartment 36D, the apartment was inspected. A punch list was prepared and subsequently a number of repairs were made. The punch list does not include any reference to the gate or the privacy fence. The only reference to the outside rear of the apartment is a question as to whether the balcony decks and railings were secure. Thus, there is no indication as to whether the gate was checked during this inspection. Further, there is no work order or other evidence indicating that any work was performed on the gate by the apartment management.

The apartment was also inspected on or around July 19, 1999 by the maintenance supervisor for Olde Plantation. This inspection was

to ensure that the repairs from the punch list had been performed properly and that the apartment was ready to be leased. The maintenance supervisor testified that he checked the balcony, and although the punch list did not reference the gate in the privacy fence, he stated that he checked it. He said that the gate was working properly and was not nailed shut.

On or before July 30, 1999, construction began on a closet in one of the bedrooms of Apartment 36D. This construction was completed before World Relief was provided a key to the apartment and before the plaintiffs moved in a week or so later. The maintenance supervisor testified that during construction of the closet, workmen brought materials up the back stairs, onto the balcony, through the privacy fence gate and into the apartment through the sliding glass door. The maintenance supervisor, who is responsible for assigning all work done in the apartment complex, testified that he did not instruct anyone to work on the privacy fence gate after his July 19 inspection. Nor did the plaintiffs, or anyone else, complain prior to the fire that the gate was not working properly.

Although the apartment's leasing office generally performed a "move-in" inspection of newly leased apartments in the presence of the new tenants, it did not follow this procedure for World Relief tenants such as the plaintiffs. Rather, this function was delegated to a World Relief caseworker. The record demonstrates, however, that a leasing agent for the apartment filled out a move-in inspection form for Apartment 36D, indicating that the form was provided to the plaintiffs on August 6, 1999. The form references the various rooms and areas of the apartment and contains blocks for the agent to describe the condition of these areas, with handwritten notations. The leasing agent filled out all the blocks on the plaintiffs' form, with the exception of the block referring to the outside of the apartment, which was left blank. Accordingly, there is no indication that the area outside the apartment was included in any move-in inspection.

On August 13, 1999, at approximately 1:00 a.m., an arsonist spread gasoline and intentionally ignited a fire in the common area between the front doors of Apartments 36C and 36D. Osman was asleep in her bedroom at the time and was awakened by shouting. When Osman awoke and saw smoke and fire, she ran straight to the balcony. Osman was unaware that there was a gate in the fence or stairs on the other side, but she "pushed on the wood" of the fence, thinking she could get through. She did not attempt to pull any part of the fence toward her. Osman saw "everybody" jumping from the balcony, and unable to find her way through the fence, she decided to jump, too. As a result, she sustained an injury to her arm, thumb and right leg.

The other seven occupants reacted to the fire as follows:

(1) Jabuti Ali was the first to jump from the balcony. Prior to the fire, Jabuti had never been on the balcony and did not know that there were stairs leading off the balcony to the ground. When he became aware of the fire, he made his way to the balcony, and "saw everybody." He and the others then jumped off the balcony.

(2) Before the fire, Hanif Ali also was unaware of the gate or the stairs leading from the balcony. When the fire started, he started yelling and went to the balcony. He saw approximately four people standing there, looking for a way to escape. He jumped off after Jabuti Ali.

(3) Dofo Ali never went onto the balcony before the fire. He saw Jabuti standing on the balcony and a crowd of people below. He did not have time to check to see if everyone was out and he did not check to see if there was a gate or that there were stairs.

(4) Ayan Ali had never been on the balcony before the night of the fire. She was unaware of the gate in the fence or the stairs leading from the balcony to the ground. On the night of the fire, she saw the boys jumping from the balcony and decided to jump after them.

(5) Abdikani Ali had been on the balcony, but was not aware of the gate in the privacy fence before the night of the fire. That night she saw people on the ground and jumped off the balcony.

(6) Mohamed Ali had never been on the balcony before that night and was unaware of the gate or the stairs. He never tried to open the gate. When he saw the fire, he ran and jumped after Jabuti.

(7) The record contains no evidence that Farhiya Dakane Nur ever went onto the balcony the night of the fire or that anyone saw her there. She was last seen in a front window of the apartment, while the balcony is in the rear of the apartment. The fire department laddered up to the window, but Farhiya was not there. She perished in the fire, and her body was found in the front stairwell outside the front door of the apartment.

The plaintiffs assert that the trial court erred in granting summary judgment as to the claims other than Osman's individual claims. In denying summary judgment on Osman's claims, the trial court concluded that an issue of fact existed as to whether the gate was nailed shut on the night of the fire. The plaintiffs contend that this fact issue also precludes summary judgment on the remaining claims. Olde Plantation and HMI contend that the trial court erred in denying summary judgment as to Osman's individual claims because they assert that there was no evidence that any act or omission on their part caused Osman's injuries.

*Case No. A04A0814*

1. In Georgia, a landlord has a duty to keep rented premises in repair and may be liable for damages for failing to do so. OCGA §§ 44-7-13; 44-7-14. This does not mean, however, that a landlord is an ensurer of its tenants' safety; rather, liability attaches only where the landlord has actual or constructive superior knowledge of a defective condition. *Padilla v. Hinesville Housing Auth.*, 235 Ga. App. 409, 411 (509 SE2d 698) (1998). A plaintiff can establish constructive knowledge in one of two ways:

> First, constructive knowledge can be demonstrated by show-ing that an employee was positioned in the immediate vicinity and had the opportunity and means to discover and remove the hazard. . . . Second, constructive knowledge may be shown by evidence that the alleged hazard was present for such a length of time that it would have been discovered had the proprietor exercised reasonable care in inspecting the premises.

*Lee v. Food Lion*, 243 Ga. App. 819, 821 (534 SE2d 507) (2000).

Here, the possibility exists that plaintiffs could demonstrate constructive knowledge under either of the two methods. In connec-tion with the first method, the evidence showed that the apartment complex had at least one employee in the area of the privacy fence before the apartment was leased to the plaintiffs. But an issue of fact exists as to the condition of the fence at the time of the fire. To prevail at summary judgment on the second method of establishing construc-tive knowledge, a property owner "must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident." (Footnote omitted.) *Hutchins v. J. H. Harvey Co.*, 240 Ga. App. 582, 585 (2) (524 SE2d 289) (1999). Here, Olde Plantation and HMI had certain procedures in place to inspect apartments before they are leased to new tenants, but we cannot conclude as a matter of law that this inspection program was reasonable under the circumstances or that the landlord performed the inspection with reasonable care. See id. at 585-586 (2).

The punch list form used in the July inspections did not specifi-cally require an inspection of the privacy fence or the gate. And although the maintenance supervisor testified that he did inspect the privacy fence and gate, the evidence is in conflict as to what that inspection should have revealed. The maintenance supervisor testi-fied that the gate was in working order, but Velazquez-Carter said that the condition of the gate had not changed between the time she

observed that it had been nailed shut in April 1999 and the night of the fire. Moreover, there is no evidence indicating that anyone worked on the gate during that period. Thus, jury issues exist as to (1) whether the gate was nailed shut that night; (2) if so, whether the maintenance supervisor should have discovered the gate's condition in the earlier inspections; and (3) whether the landlord's inspection efforts were reasonable under the circumstances. *Hutchins v. J. H. Harvey Co.*, 240 Ga. App. at 585 (2).

Olde Plantation and HMI contend, however, there is no evidence that any negligence on their part could have been the proximate cause of Osman's injuries. Generally, questions of proximate cause are for the jury "[e]xcept in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached." (Punctuation and citation omitted.) *McDonald v. Coca-Cola Enterprises*, 220 Ga. App. 567 (469 SE2d 805) (1996). Olde Plantation and HMI assert that no issue of fact remains as to proximate cause because Osman only pushed on the fence, while the evidence indicates that the gate opened inward toward Apartment 36D. Thus, they contend that any alleged condition of the fence could not have proximately caused her injury.

The gate apparently was kicked off the fence by firefighters following the fire. The expert for Olde Plantation and HMI later propped up the gate and took photographs of his efforts. He testified that the hinges and the handle were on Apartment 36D's side of the fence, and Olde Plantation and HMI contend that this supports the conclusion that the gate opened inward toward the plaintiff's apartment. But Osman testified, for example, that she could not locate a handle the night of the fire. Thus, we do not believe the expert's evidence renders this such a plain, palpable and undisputed case that the issue of proximate causation can be resolved as a matter of law.

*Case No. A04A0813*

2. Having found that an issue of fact exists as to whether Olde Plantation and HMI are liable for Osman's injuries, we conclude that an issue of fact exists as to whether they are also liable to the other occupants of the apartment who were on the balcony that night. The evidence indicates that six of the other occupants gathered on the balcony that night searching for a way to escape, and they followed one another's example in jumping off the balcony to get away from the fire. If the jury were to find that the defendants' inspection negligently failed to reveal that the gate was nailed shut and that this negligence prevented Osman from escaping safely down the stairs, a separate jury issue would exist as to whether such negligence also caused injury to the other plaintiffs who together with Osman were

looking for an exit. We, therefore, reverse the grant of summary judgment as to the claims of the remaining plaintiffs, with the exception of the claims of Osman as administrator of the estate of Farhiya Dakane Nur. There is no evidence that Nur was ever on the balcony that night or ever tried that means of egress from the apartment. Thus, the trial court properly granted summary judgment on the claims arising from her death.

*Judgment affirmed in part and reversed in part in Case No. A04A0813. Judgment affirmed in Case No. A04A0814. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 24, 2004.

*Bruce A. Hagen*, for appellants.
*Bovis, Kyle & Burch, James E. Singer, Wayne A. Morrison, Kristen E. Richbourg*, for appellees.