■ LAURA I.M. et al., Respondents, v HILLSIDE CHILDREN'S CENTER, Appellant. [845 NYS2d 16]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered October 20, 2006, which, to the extent appealed from, granted plaintiffs' motion for summary judgment as to liability for negligent failure to exercise professional judgment, and denied defendant's cross motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

For purposes of this appeal, it is undisputed that the two infant plaintiffs were sexually abused by Sergey Reznikov, a young man who sometimes served as their babysitter, at various points in time during 1997 and 1998. In April 1998, the mother of the infant plaintiffs learned of Reznikov's abuse and reported it to the police. Reznikov subsequently pleaded guilty to charges of sexual abuse and child endangerment based on offending behavior against one of the infant plaintiffs that was committed between December 1997 and March 1998.

Plaintiffs have commenced this action against defendant Hillside Children's Center (Hillside), a treatment facility for emotionally disturbed children aged 10 to 18, to recover damages for the instances of Reznikov's abuse that occurred after October 14, 1997, the date Reznikov was voluntarily admitted to Hillside as an inpatient.* It is undisputed that Reznikov came to Hillside with a well-documented prior history of pedophilic behavior and of aggressively seeking out and cultivating opportunities to engage in such conduct. This history included his having molested several children at his previous treatment facility, which led to his arrest on a charge of sodomy in the second degree and his transfer to Hillside for the specific purpose of treating his pedophilic tendencies. As Reznikov

---

* Reznikov was originally also a defendant in this action. In March 2004, Supreme Court granted plaintiffs' motion for a default judgment against Reznikov, and severed the remainder of the action for further proceedings. The order granting the default judgment against Reznikov notes that he was then an inmate of a secure psychiatric facility in Minnesota.

stated in his application to Hillside, the reason he sought admission there was "to treat my sexual issues so I can control my sexual impulses."

Upon admitting Reznikov, Hillside classified him as a "status 3" client. According to Hillside's policy manual, a "status 3" client requires "monitoring at all times, except when . . . bathing, showering, dressing, toileting, or in [his] room." The manual gives the following explanation for such supervision: "Without this intervention, clients may enter into, or engage in, situations which could lead to danger to self, others, or . . . property destruction."

During his residency at Hillside, Reznikov was permitted to make unaccompanied weekend visits to his home in New York City; during these visits, Reznikov was supervised (according to Hillside) by his mother and an older sister. The home visits were approved by Reznikov's therapist at Hillside, social worker Wendy Yost; it is not clear from the record whether Hillside's staff psychiatrist, or any other Hillside professionals, participated in the decision to permit such visits. Due to Hillside's invocation of Reznikov's physician-patient privilege, testimony and documents evidencing the specific deliberations that led to the judgment to permit Reznikov's home visits have been deemed inadmissible. Yost and one of her supervisors, counselor Charles Weld, did testify, however, that factors generally considered in determining whether to permit such home visits were the client's progress in treatment, the likelihood of harm to the client or others during such a visit, and the ability of the client's family to provide supervision.

The abuse for which plaintiffs seek recovery occurred during the home visits Reznikov made in the course of his residency at Hillside. Reznikov, who had befriended plaintiffs before he was admitted to Hillside, babysat for the infant plaintiffs during such home visits and, while doing so, sexually abused them. It is plaintiffs' contention that Hillside, in permitting Reznikov to make unaccompanied visits home in spite of his known pedophilic proclivities, did not merely make an honest error of professional judgment, but simply failed to exercise any professional judgment, thereby incurring liability to persons foreseeably harmed as a result of that failure (see Huntley v State of New York, 62 NY2d 134 [1984]; Rattray v State of New York, 223 AD2d 356 [1996]; Bell v New York City Health & Hosps. Corp., 90 AD2d 270 [1982]). Hillside, while arguing that any direct evidence of its consideration of Reznikov's request for permission to make home visits is shielded by Reznikov's unwaived physician-patient privilege, contends that the

testimony by Weld and Yost as to the factors the institution generally considers in determining whether to allow home visitation suffices to establish that it exercised professional judgment in granting that privilege to Reznikov. In any event, the rule is that if Hillside did exercise professional judgment in allowing the home visitation, it cannot be held liable, even if it is clear, in light of subsequent events, that the institution erred in exercising its judgment (*see Schrempf v State of New York*, 66 NY2d 289 [1985]).

After discovery, plaintiffs moved for summary judgment as to liability, and Hillside cross-moved for summary judgment dismissing the complaint. Supreme Court granted the motion in pertinent part, and denied the cross motion. On Hillside's appeal, we affirm.

Plaintiffs met their burden, as movants for summary judgment, to establish a prima facie case for Hillside's liability by submitting the deposition testimony of Eleonora Reznikov, Sergey Reznikov's mother. Ms. Reznikov testified, in substance, that, although she was unable to prevent her son from molesting children while he was visiting her, no Hillside professional had discussed with her whether she would be capable of supervising him during his home visits. Specifically, Ms. Reznikov gave the following testimony:

"Q. Now, at the time that you took Sergey to Hillside, were you able to manage Sergey at home?

"A. No.

"Q. Were you able to control Sergey at home?

"A. No.

"Q. Were you able to prevent him from molesting children while he was home?

"A. No, I couldn't. . . .

"Q. When Sergey came home alone for weekends from Hillside Hospital, were you able to manage him?

"A. No. . . .

"Q. Did you ever tell anyone at Hillside that you could not supervise your son on the weekends that he was home?

"A. *We did not discuss that question.*" (Emphasis added.)

We fail to see how Hillside could have exercised professional judgment in determining that it was appropriate to permit Reznikov to make home visits if the institution had not even discussed with his mother whether she had the ability to supervise her son during such visits so as to prevent him from relapsing into pedophilic behavior (*see Bell*, 90 AD2d at 282-283

[affirming judgment against psychiatric hospital where the decision to release plaintiff, who subsequently attempted suicide, "was not a professional medical judgment as it was not founded upon a careful examination" of all relevant facts]; *Winters v New York City Health & Hosps. Corp.*, 223 AD2d 405 [1996] [resident psychiatrist's release of patient without inquiring into the nature of his auditory hallucinations, and the phrase he kept repeating to himself, provided grounds for holding hospital liable for death of person the patient killed after being released]). Since Hillside did not offer any evidence to rebut Ms. Reznikov's statement (in response to a question by Hillside's counsel) that no one from the Hillside staff ever discussed with her whether she could supervise her son, no triable issue exists on this key point. Consequently, plaintiffs are entitled to judgment as to liability as a matter of law, without regard to any of the other legal and factual issues disputed by the parties.

While the foregoing suffices to require affirmance, we also note that the record shows that, on or about January 2, 1998, Reznikov induced the mother of the infant plaintiffs to write a letter of that date to Ms. Yost, the social worker who served as Reznikov's primary therapist at Hillside, requesting that Reznikov be given permission to make telephone calls to plaintiffs from Hillside. The handwritten letter, which Reznikov personally delivered to Ms. Yost, informed her, among other things, that the infant plaintiffs and their mother were "very fond" of Reznikov; that the mother met Reznikov "through my boys who are now 9-10 ready to be 10-11"; and that Reznikov "has babysat with them extensively." The letter concluded: "I think [Reznikov] is a wonderful, kind and very sensitive kid!" Although plaintiffs have not appealed from Supreme Court's determination that this letter does not create an issue as to whether Hillside had a duty to warn them about Reznikov's proclivities, it is disturbing that Ms. Yost, by her own admission, did not bring the letter to the attention of the psychiatrist on Hillside's staff, of her supervisor, Mr. Weld, or of Peter Goodman, another person who supervised her work. Ms. Yost's undisputed failure to inform the psychiatrist responsible for Reznikov's care of the aforementioned letter, so that, at a minimum, Reznikov's home-visitation privileges could be reassessed by a qualified psychiatrist in light of such information, constitutes an independent ground for granting plaintiffs summary judgment as to liability for abuse that occurred after the delivery of the letter (*see Huntley*, 62 NY2d at 136-137 [failure of a hospital employee to transmit information about a psychiatric patient's suicide plans to the staff psychiatrist who controlled the patient's leave privileges rendered the hospital liable for negligence]).

In closing, we note that we make no suggestion that it was inappropriate for Hillside, in treating Reznikov, to consider whether to allow him home visitation. The determination to allow such visits could be made, however, only after Hillside had determined, in the exercise of its professional judgment, that Reznikov did not pose an undue risk of danger to those with whom he would come into contact. The existing record, even circumscribed as it is by Hillside's invocation of the physician-patient privilege, demonstrates that Hillside failed to exercise such professional judgment.

We have considered Hillside's remaining contentions and find them unavailing. Concur—Mazzarelli, J.P., Friedman, Marlow, McGuire and Malone, JJ.