### A09A0139. DOE et al. v. ANDUJAR et al.
(678 SE2d 163)

PHIPPS, Judge.

John and Jane Doe, individually and on behalf of their minor son, Richard Roe,[1] appeal the grant of summary judgment against them in their negligence action against Bruce and Marie Andujar. In their complaint, they contended that a thirteen-year-old boy, D. R., for whom the Andujars were legal guardians, sexually molested five-year-old Richard while he was at the Andujars' house under the care of Marie Andujar. Because the Does did not meet their burden of pointing to specific evidence that the Andujars breached their duty of care to Richard or to the Does, we affirm.

> A defendant demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.[2]

We review the grant or denial of a motion for summary judgment de novo, reviewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

So viewed, the evidence shows that in November 2002, D. R. and his siblings began living with Bruce and Marie Andujar, who later became the children's guardians. On three occasions during the summer of 2004, D. R. hugged Bruce Andujar in a prolonged manner that made Bruce uncomfortable. On the third of these occasions, which occurred in August 2004, D. R. looked Bruce in the eye during

---

[1] The appellants are using pseudonyms in this action pursuant to a protective order entered by the trial court.

[2] *O'Connell v. Cora Bett Thomas Realty*, 254 Ga. App. 311 (563 SE2d 167) (2002) (footnotes omitted).

[3] *Osman v. Olde Plantation Apts. &c.*, 270 Ga. App. 627 (607 SE2d 236) (2004).

a goodnight hug and demonstrated to Bruce that he had an erection.[4]

At some point after the summer of 2004, D. R. and some of the children in the Andujar household spent the night at the Does' house. When Bruce Andujar went to the Does' house to say goodnight to the children, he told the Does that D. R. had experienced an erection during a hug. John Doe deposed: "I took the gist of that advisement . . . that [D. R.] was reaching the age of puberty and that sometimes things like that occur with little boys and [Bruce] wanted to make sure we were aware that that was the stage that [D. R.] was in." After receiving this information from Bruce, the Does allowed D. R. to spend the night at their house.

Marie Andujar sometimes provided unpaid childcare for Richard Roe. On September 19, 2005, the Does arranged for Richard to stay at the Andujars' house after school, under Marie's care. D. R. was present for a part of the time while Richard was at the Andujars' house. Jane Doe testified that Marie "specifically agreed not to leave Richard at the house in her absence," but that she "later learned from [Marie] that [Marie] had in fact left Richard alone that day[.]"[5] Richard later told his mother that, while he was at the Andujars' house, D. R. had molested him.

The Does subsequently brought an action against the Andujars, alleging that they were negligent in allowing D. R. access to Richard, negligent in misrepresenting that they would provide adult supervision to Richard,[6] and negligent in failing to warn the Does of D. R.'s "dangerous propensities." The trial court granted summary judgment to the Andujars.

1. The Does state in their brief on appeal that their claim of "[l]iability is based on the negligence of the defendant in unleashing a sexual predator on their friends without warning" and they contend that "[n]egligence in allowing a sexual deviant access to a child is a proper basis for liability in Georgia."

A person who undertakes to supervise a child, whether or not for compensation, has a duty to use reasonable care to protect the child

---

[4] There is conflicting evidence on whether Bruce simply felt D. R.'s erection during the hug, or whether D. R. lifted his leg to show Bruce the erection. The only evidence of the latter is contained in the background section of a psychosexual evaluation of D. R. performed in November 2005, after the molestation occurred. The Andujars contend that the report's contents are hearsay. We need not address the report's admissibility, however, because even considering its contents we find that summary judgment was appropriately granted to the Andujars. See Division 1 (b), infra.

[5] In contrast, Marie Andujar deposed that, on the day in question, she took Richard with her to pick up another child from school.

[6] The Does did not assert a separate claim for breach of a promise to provide adult supervision.

from injury.[7] Such person is not an insurer of the child's safety, but must exercise that care which a prudent person would exercise under like circumstances.[8] "He is required only to use reasonable care commensurate with the reasonably foreseeable risk of harm."[9]

(a) The Does have pointed to no evidence in the record that, when they placed Richard in Marie Andujar's care on September 19, 2005, Bruce Andujar was at home or undertook to supervise Richard. The court did not err in granting summary judgment to Bruce Andujar on claims of negligence based upon the supervision provided to Richard on this date.

(b) Although Marie Andujar undertook to supervise Richard on September 19, 2005, there is no evidence that she failed to use reasonable care commensurate with the reasonably foreseeable risk of harm in supervising Richard on that day.

In determining whether a caregiver used reasonable care commensurate with the reasonably foreseeable risk of harm in supervising a child, Georgia courts have looked at whether the caregiver had knowledge of a "proclivity or propensity . . . for the specific dangerous activity."[10] Thus, in *Bunn v. Landers*,[11] grandparents were entitled to summary judgment on a claim that they had negligently supervised their grandchild and his friend, who was killed in a go-cart accident, because there was no evidence that the grandparents knew that their grandchild had a propensity to drive the go-cart without permission or supervision.[12] Likewise, in *McKelvey v. Plaisted*,[13] a parent was entitled to summary judgment on a negligent supervision claim involving an injury caused by a bungee cord that the defendant's child and a neighboring child took without permission from the defendant's garage, because there was no evidence either that the defendant was aware the children had obtained and intended to play with the item or that either child "had a proclivity or propensity to play with bungee cords."[14]

The parties in this case dispute whether the three incidents in the summer of 2004, involving hugs between D. R. and Bruce Andujar that made Bruce uncomfortable, gave the Andujars knowledge of a proclivity or propensity for D. R. to molest another child, such that it would be unreasonable for Marie Andujar to allow D. R.

---

[7] *Bunn v. Landers*, 230 Ga. App. 744, 745 (2) (498 SE2d 109) (1998).

[8] Id.

[9] Id. (citation and punctuation omitted).

[10] Id. at 747 (3) (citation, punctuation and emphasis omitted).

[11] Id.

[12] Id. at 746-747.

[13] 278 Ga. App. 531 (629 SE2d 464) (2006).

[14] Id. at 534 (2).

YALE LAW LIBRARY

to be around Richard without adult supervision.[15] But the undisputed evidence showed that, after these three incidents occurred, the Andujars sought advice from a psychological professional and were told that these incidents reflected "a misguided direction of [D. R.]'s emotions in relationship to father and son" and "not to worry" about them being sexual advances. Nothing in the record suggested that the Andujars disbelieved this advice when they received it or at any other time before learning of the molestation.[16] Marie Andujar testified that she viewed the incidents to reflect a "confused young boy wanting the attention of the person he deemed to be the father," albeit with a "sexual overtone." Bruce Andujar testified that, prior to learning of the molestation, he did not believe that D. R.'s behavior indicated that the boy had a "sexual problem." And the Andujars continued to allow D. R. to live in their household, in which several other children also lived, until they learned of the molestation in September 2005.

Moreover, even if the 2004 incidents could have been construed as indications that a young teenaged boy had sexual feelings toward an adult guardian, we find no support for the proposition that such actions demonstrated the boy's proclivity or propensity to engage in an act of sexual violence against a child. Cases from other jurisdictions, cited by the Does in support of their claim, involved evidence that the defendants had prior knowledge of the specific type of behavior that formed the basis of the claims of liability.[17] In *Laura*

---

[15] Although a factual dispute exists concerning whether Marie left Richard with D. R. without adult supervision, the Does have not asserted that the act of leaving a younger child in the care of a 13-year-old constituted negligence, absent knowledge of the alleged dangerous propensities.

[16] A November 2005 psychosexual evaluation of D. R. indicated that Marie Andujar later described these incidents as D. R. attempting to "act out sexually" toward Bruce. This description, made after Marie learned about the molestation, did not conflict with her testimony that, before the molestation, she believed the professional advice that the incidents were not a cause for concern.

[17] See *Hei v. Holzer*, 181 P3d 489, 492 (Idaho 2008) (involving school district held liable in case where superintendent learned that teacher had sexual feelings for eighteen-year-old student and the two subsequently developed a sexual relationship); *Doe v. East Baton Rouge Parish School Bd.*, 978 S2d 426, 431-433 (La. App. 2007) (evidence of a school board's awareness of prior sexual assaults among students at a school bus transfer point supported the board's liability for a subsequent sexual assault); *Doe v. Jeansonne*, 704 S2d 1240, 1245-1246 (La. App. 1997) (summary judgment not appropriate where chaperone of teenage party saw two teens lying on a bed and kissing in a manner that would have given the average adult "some knowledge as to the sexual propensities of the two," and the girl later became pregnant at the party); *Bjerke v. Johnson*, 742 NW2d 660, 668 (Minn. 2007) (summary judgment was not appropriate on negligent supervision claim against woman whose live-in boyfriend became sexually involved with a teenager under her care, given evidence that the defendant had observed on numerous occasions unusual and intimate behavior between the two); *Gritzner v. Michael R.*, 611 NW2d 906, 916-923 (Wis. 2000) (motion to dismiss was properly denied given allegation that boy, who molested younger girl in defendant's care, previously had engaged in inappropriate sexual acts with other children).

*I. M. v. Hillside Children's Center*,[18] for example, children were molested by a teenaged babysitter while the teenager was on a home visit from a treatment center for emotionally disturbed children. The court held that the treatment center could be found liable for allowing the inadequately supervised home visit, because the teenager had a well-documented prior history of pedophilic behavior and of aggressively seeking out and cultivating opportunities to engage in such behavior.[19] The facts in *Laura I. M.* stand in contrast to those here, where D. R. had no history of pedophilic behavior.[20]

Because there is no evidence in the record showing that D. R.'s molestation of Richard was a reasonably foreseeable harm that resulted from a failure by Marie Andujar to exercise reasonable care in supervising the children at her house, we find no error in the grant of summary judgment on the negligent supervision claim against Marie Andujar.

2. The Does have pointed to no evidence in the record giving rise to a jury question on their claim that Bruce and Marie Andujar failed to warn them of D. R.'s alleged dangerous propensities. As discussed in Division 1,[21] there is no evidence that either of the Andujars knew at the time of the alleged propensities. Moreover, the Does admit that Bruce Andujar told them about the August 2004 incident. We find no error in the grant of summary judgment on this claim.

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED MAY 6, 2009.

*Joseph H. King, Jr.*, for appellants.
*Swift, Currie, McGhee & Hiers, Lynn M. Roberson*, for appellees.

---

[18] 45 AD3d 260 (N.Y. App. 2007).

[19] Id. at 260-262.

[20] Other cases from other jurisdictions cited by the Does, while not involving knowledge of a specific behavior, nevertheless involved knowledge that raised concerns. See *Haselhorst v. Nebraska*, 485 NW2d 180, 184-190 (Neb. 1992) (upholding award of damages to foster family attacked by teenaged foster child, based on agency's negligence in failing to inform them of child's history of violent actions against his biological mother); *Doe v. Lorich*, 15 AD3d 904, 905 (N.Y. App. 2005) (holding school superintendent's knowledge of a letter from third grade teacher to one student gave rise to fact question concerning whether school exercised proper care and supervision over another student, who was sexually abused by the teacher). In contrast, the Andujars were told by a professional, and believed, that the boy's behavior toward Bruce was not a cause for concern that D. R. was engaging in sexual advances.

[21] Supra.