**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2097. JANE DOE I et al. v. YOUNG WOMEN'S
CHRISTIAN ASSOCIATION of GREAT ATLANTA, INC.
et al.

MILLER, Presiding Judge.

Jane Doe I brought suit against Young Women's Christian Association of Greater Atlanta, Inc. ("YWCA") and its employee, Lythea Oliver-Gaither, alleging that her then four-year-old daughter, Jane Doe II,[1] was sexually assaulted by a ten-year-old boy while Oliver-Gaither was supervising Doe II at the YWCA's transitional family shelter house (hereinafter the "Shelter House") where Doe I and Doe II temporarily resided. The YWCA and Oliver-Gaither filed a motion for summary judgment, which the trial court granted. The trial court also denied Doe I's cross-

---

[1] The appellants are using pseudonyms in this action pursuit to a protective order entered by the trial court.

motion for summary judgment on the enforceability of exculpatory clauses she signed when she moved into the shelter. Doe I and Doe II appeal from those orders, contending that the trial court erred in granting summary judgment to the YWCA and Oliver-Gaither, because questions of fact remain regarding her claims for negligent supervision, negligent security, and negligent supervision/training of an employee. Doe I and Doe II also contend that the trial court erred in granting the YWCA and Oliver-Gaither's motion for summary judgment and denying Doe I & Doe II's cross-motion for summary judgment, concerning the enforceability of the exculpatory clauses. For the reasons that follow, we affirm the trial court's decision.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations and punctuation omitted.) *Campbell v. Landings Assn.*, 289 Ga. 617, 618 (713 SE2d 860) (2011).

So viewed, the evidence shows that the Shelter House is a transitional family facility operated by the YWCA where homeless women and their children can live for a temporary period. The Shelter House has a common area on the first floor, and five separate rooms on the second floor for each of the families who live there. The

separate rooms have partition-type dividing walls which leave a two-foot gap between the top of the wall and the ceiling.

Doe I and Doe II moved into the Shelter House in July 2008. Doe I and her children had their own room with a lock on the door. Doe I signed documents, including the Resident Handbook and the Resident Intake Form that included a release of liability for injuries arising out of her and her children's occupancy or participation in sponsored activities. Doe I also signed a Shelter Agreement and Liability Release, which provided that, in consideration of childcare and temporary housing for herself and her children, as "listed individually within this file," DOE I released and discharged the Shelter House and its employees from any responsibility and liability for injury, illness and any claims of any sort arising in connection with DOE I's temporary lodging.

The Resident Handbook provides that no child may stay on site without his/her parent, and that parents are fully responsible for the safety, care and supervision of their children at all times. Nevertheless, the Shelter House allows parents to enter into written babysitting agreements with other parents. . Shelter House staff members are also allowed to care for residents while their mother is away from the shelter;

however, there were no written rules or procedures for employees providing such care.

On August 28, 2008, Oliver-Gaither, who is a shelter advocate at the Shelter House, verbally agreed to watch then four-year-old Doe II for an unspecified time while Doe I went to meet a prospective landlord about an apartment. This was the first and only time Oliver-Gaither watched either of Doe I's children.

Oliver-Gaither kept in constant contact with Doe II at first. When Doe II started acting out, Oliver-Gaither called Doe I to tell her that she needed to return to the Shelter House. When Doe I did not immediately return, Oliver-Gaither called Doe I again because Doe II was still acting up. Oliver-Gaither then sent Doe II upstairs to her room. Oliver-Gaither repeatedly checked on Doe II upstairs, and Doe II was never out of Oliver-Gaither's sight for more than 10 to 15 minutes at a time.

When Doe I returned to the Shelter House, she found one of her condom wrappers in the trash can in one of the upstairs bathrooms. When asked about the condom wrapper, Doe II said that a ten-year-old boy who lived at the Shelter House put the condom on his private part and tried to put his private part in her. Doe I called the police. The responding officer asked Doe I and Doe II about the incident, and then

4

took them to the hospital. The hospital emergency room report showed no sign of recent trauma.

Doe I subsequently filed suit against the YWCA and Oliver-Gaither, alleging that the YWCA and Oliver-Gaither breached their duty to properly supervise Doe II; the YWCA failed to properly supervise and train Oliver-Gaither; and the YWCA failed to keep its premises safe and secure to protect minor children under its supervision. Doe I also moved to set aside the release she signed as violative of public policy and for lack of consideration. The YWCA and Oliver-Gaither answered, and moved for summary judgment on Doe I's claims. Doe I filed a cross-motion for partial summary judgment on the enforceability of the liability release.

The trial court denied Doe I's motion for partial summary judgment, and granted summary judgment to the YWCA and Oliver-Gaither, finding that the liability release is enforceable and barred both Doe I and Doe II's claims against the YWCA and Oliver-Gaither. The trial court also found that Doe I's premises liability claim failed because the incident was not forseeable; Doe I's negligent childcare supervision claim failed because Doe I did not show that Oliver-Gaither had knowledge that the ten-year-old had a proclivity or propensity for sexual assault; and Doe I's claim for negligent training/supervision of Oliver-Gaither failed because no

evidence showed that this type of incident had previously occurred while a YWCA employee was watching a resident's child. This appeal ensued.

1. Doe I contends that the trial court erred in granting the YWCA and Oliver-Gaither's motion for summary judgment because factual questions remain regarding her claims for negligent supervision of a child. We disagree.

> To establish a claim for negligence in Georgia, a plaintiff must show: (1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage to plaintiff's legally protected interest.

(Citations and punctuation omitted.) *Walker v. Aderhold Properties*, 303 Ga. App. 710, 712 (1) (694 SE2d 119) (2010). In a negligent childcare supervision case,

> the measure of duty of a person undertaking control and supervision of a child to exercise reasonable care for the safety of the child is to be gauged by the standard of the average responsible parent; such person is not an insurer of the safety of the child and has no duty to foresee and guard against every possible hazard. The measure of precaution which must be taken by one having a child in his care, who stands in no relation to the child except that he has undertaken to care for it, is that care which a prudent person would exercise under like circumstances. As a general rule, a person who undertakes the control and supervision

6

of a child, even without compensation, has the duty to use reasonable care to protect the child from injury. Such person is not an insurer of the safety of the child. He is required only to use reasonable care commensurate with the reasonably foreseeable risk of harm. Thus, as in every negligence case, the standard of care in a negligent childcare supervision case is that of a reasonably prudent person under like circumstances.

(Citations and punctuation omitted.) *Thurman v. Applebrook Country Dayschool, Inc.*, 278 Ga. 784, 786 (1) (604 SE2d 832) (2004). A childcare provider who undertakes the supervision of small children cannot avoid liability because no prior similar injuries to the child placed the supervisor on notice of the potential for such harm. See *Bull St. Church of Christ v. Jensen*, 233 Ga. App. 96, 100 (1) (504 SE2d 1) (1998). However, childcare providers have no duty to foresee and guard against every possible hazard. See *Ball v. Bright Horizons Children Center, Inc.*, 260 Ga. App. 158, 162 (578 SE2d 923) (2003). Thus, in negligent supervision cases, "Georgia courts have looked at whether the caregiver had knowledge of a proclivity or propensity for the specific dangerous activity." (Punctuation and footnote omitted.) *Doe v. Andujar*, 297 Ga. App. 696 (678 SE2d 163) (2009).

In this case, the undisputed evidence showed that Oliver-Gaither undertook a duty to supervise Doe II for an unspecified time while Doe I went to meet a

7

prospective landlord about an apartment. Thus, Gaither had a duty to use reasonable care to protect Doe II from a reasonably foreseeable risk of harm, and the issue is whether any evidence showed that the danger of the sexual assault on Doe II was reasonably foreseeable. See *Andujar*, supra, 297 Ga. App. at 698 (b).

Doe I argues that the YWCA and Oliver-Gaither had knowledge of the alleged perpetrator's propensity for violence based on two prior incidents. The evidence showed that three months before the sexual assault the alleged perpetrator was involved in an argument at the Shelter House when he went to the kitchen to retrieve a knife. The evidence also showed that several days before the sexual assault, Doe I saw the alleged perpetrator jump over the dividing wall in an upstairs room into another minor resident's room.

However, no evidence showed that the YWCA or Oliver-Gaither had any knowledge that the alleged perpetrator had a proclivity or propensity to engage in an act of sexual violence against another child. Moreover, the undisputed evidence showed that Doe II was never out of Gaither's sight for more than 10-15 minutes at a time. Thus, no evidence in the record showed that the alleged perpetrator's molestation of Doe II was a reasonably foreseeable harm that resulted from a failure

8

by Oliver-Gaither to exercise reasonable care in supervising the Doe II.[2] See *Andujar*, supra, 297 Ga. App. at 700 (1) (b). Accordingly, the trial court properly granted summary judgment to the YWCA and Oliver-Gaither on the negligent supervision claim.

2. Doe I contends that questions of fact remain regarding her claim for negligent supervision/training of an employee. We do not agree.

> An employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable that the employee's tendencies could cause the type of harm sustained by the plaintiff. However, it is not necessary that the employer should have contemplated or even be able to anticipate the particular consequences which ensued, or the precise injuries sustained by the plaintiff. In order

---

[2] *Wallace v. Boys Club*, 211 Ga. App. 534 (439 SE2d 746) (1993) (holding that a jury question remained regarding whether the abduction and assault of a five-year-old boy in a summer day camp program was foreseeable), does not compel a different result because the child in that case wandered off the premises without adult supervision, and the evidence showed that the defendant had previously lost track of the child's whereabouts. Moreover, *Bull St.*, supra, 233 Ga. App. at 99-100 (1), which directly relied on *Wallace*, involved a defendant who had actual notice of the perpetrator's sexual propensities towards children. Since the defendant in *Bull St.* had actual notice of the perpetrator's propensity for the specific dangerous activity, the language in that case noting that caregivers of small children are "charged with constructive notice of the general risks of harm, including assault and molestation, that may befall an unsupervised child" was mere dicta, and is not binding on this Court. See *State v. Kell*, 276 Ga. 423, 425 (2003).

to defeat summary judgment on [a claim for negligent training and supervision], a plaintiff must produce some evidence of incidents similar to the behavior that was the cause of the injury at issue.

(Citations and punctuation omitted.) *Remediation Resources Inc. v. Balding*, 281 Ga. App. 31, 34 (2) (635 SE2d 332) (2006).[3] Moreover, with regard to negligent training claims, "[t]here must be a causal link between the alleged breach of duty and the injury caused." (Footnote omitted.) *La Petite Academy v. Turner*, 247 Ga. App. 360, 362 (1) (543 SE2d 393) (2000). In this case, the trial court properly granted summary judgment to the YWCA on Doe I's negligent supervision/training claim, because the record is devoid of evidence that Oliver-Gaither, or any Shelter House employee, engaged in reckless or even negligent behavior while watching children prior to the incident in question, and no evidence showed that a lack of training caused Doe II's injury.

3. Doe I contends that questions of fact remain regarding the YWCA's liability under the theory of negligent security. We disagree.

---

[3] See also *Novare Group, Inc. v. Sarij*, 290 Ga. 186, 190-191 (4) (718 SE2d 304) (2011); *Weinstock v. Novare Group Inc.*, 309 Ga. App. 351, 358 (3) (710 SE2d 150) (2011); *Leo v. Waffle House Inc.*, 298 Ga. App. 838, 841 (2) (681 SE2d 258) (2009).

10

With respect to premises liability cases, the general rule is that a landlord is not an [i]nsurer of his tenant's safety; however, landlords do have a duty to exercise ordinary care to prevent foreseeable third-party criminal attacks upon tenants. Although the prior criminal activity must be substantially similar to the crime in question, there is no requirement that the crimes be identical. Prior property crimes may give a landlord notice of possible future crimes against a person.

(Citations and punctuation omitted.) *Walker*, supra, 303 Ga. App. at 712 (1).

In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question.

(Punctuation and footnote omitted.) *Vega v. La Movida, Inc.*, 294 Ga. App. 311, 313 (1) (670 SE2d 116) (2008). However,

It is not required that the same severity of criminal attack on a person must have previously occurred in certain numbers, for the viability of the law rests on the premise that there is a first time for everything. All that is required to survive a summary judgment motion by the defense is evidence that the particular danger which resulted in the assault on [DOE II] in this case was foreseeable under all the circumstances and that the [YWCA was] negligent in failing to exercise ordinary care to guard against it.

11

(Citation and punctuation omitted.) *McNeal v. Days Inn of America*, 230 Ga. App. 786, 789 (498 SE2d 294) (1998). "Further, the question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts." (Punctuation and footnote omitted.) *Vega*, supra, 294 Ga. App. at 313 (1).

Doe I argues that a prior alleged incidence of sexual assault at the Shelter House creates a jury question as to whether such a crime was foreseeable. As evidence of the prior incident, Doe I relies upon a redacted police report from 2006 that was attached as an exhibit to the deposition of the YWCA's designated representative.[4] To the extent that Doe I relied on the information in the narrative portion of the police report, that information constituted inadmissible hearsay. See *Brown v. State*, 274 Ga. 31, 33-34 (1) (549 SE2d 107) (2001). The non-narrative portion of the redacted police report may have been admissible under the business records exception to the hearsay rule. See *Brown*, supra, 274 Ga. at 33 (1) n.2. However, Doe I failed to lay any foundation for admission of the report into the record, and the YWCA's designated representative stated in her deposition that she

___

[4] The police report was not produced prior to the deposition of the YWCA's designated representative, and counsel for the YWCA and Gaither objected on the record to lack of prior production of the report.

12

had never seen the police report or heard of the alleged incident. See *Robinson v. State*, 312 Ga. App. 736, 740 (1) (a) n.5 (719 SE2d 601) (2011) (holding that the State failed to lay a proper foundation for admission of a property and evidence sheet under the business records exception); see also *Loyal v. State*, 300 Ga. App. 65, 66-67 (684 SE2d 124) (2009) (setting out requirements for admission of a warehouse security log under the business records exception).

Absent an exception to the hearsay rule, the police report cannot be used to establish that the prior incident occurred. See *Luong v. Tran*, 280 Ga. App. 15, 17 (2) (633 SE2d 797) (2006) (holding that police report constituted hearsay). Thus, no admissible evidence showed that the prior incident or any other substantially similar prior crime occurred at or inside the Shelter House. See *Walker*, supra, 303 Ga. App. at 712; *Vega*, supra, 294 Ga. App. at 313 (1). As a matter of law, in the absence of evidence showing a substantially similar prior crime, Doe I cannot show that the alleged assault on Doe II was reasonably foreseeable. See *Vega*, supra, 294 Ga. App. at 312. Accordingly, the trial court properly granted summary judgment to the YWCA and Oliver-Gaither on Doe I's negligent security claim.

4. Doe I also contends that the trial court erred in granting summary judgment to the YWCA and Oliver-Gaither, and denying her cross-motion for summary

13

judgment regarding the enforceability of the release she signed when she moved into the Shelter House. Because we find that the trial court properly granted summary judgment to the YWCA and Oliver-Gaither on Doe I's claims for negligent supervision, negligent training and negligent security, we need not address this additional contention.

*Judgment affirmed. Ray and Branch, JJ., concur.*